Dr. Ruth JACKSON et al., Appellants,

v.

FONTAINE'S CLINICS, INC., Appellee.

No. 5128.

Court of Civil Appeals of Texas, Waco.

May 4, 1972.

Rehearing Denied June 8, 1972.

Burford, Ryburn & Ford, Logan Ford, John F. Harrison, David Ford Hunt, Dallas, for appellants.

George E. Flannigan, Jerry W. Biesel, Dallas, for appellee.

OPINION

McDONALD, Chief Justice.

This is an appeal by Defendant Jackson from judgment against her in favor of Plaintiff Fontaine's for $25,000 actual and $65,000 exemplary damages, in an unfair trade practices suit.

Plaintiff Fontaine's Clinics, Inc. which operates three clinics for the removal of hair from the human body by electrolysis, sued Defendants Dr. Ruth Jackson, Catherine Ward, Gwynn Gambrell, Margaret Hanson, and A.S.E. Dermatetics Clinics, Inc., to enjoin alleged unfair trade practices of defendants and to recover damages caused thereby. Plaintiff alleged defendants entered into a conspiracy to commit, and did commit acts which damaged plaintiff's business and reputation by proselyting plaintiff's employees and its business secrets; and by interfering with its contractual relations with its employees and patients, through libelous statements and inducements, causing damages for which all defendants are jointly and severally liable. Plaintiff sought $181,024 actual damages and $1,000,000 punitive damages.

Trial was to a jury which found:

1) Ruth Jackson, Catherine Ward, Gwynn Gambrell and Margaret Hanson entered into a conspiracy to embark upon a plan, scheme or design for the commission of acts calculated to damage Fontaine's Clinics in its business operations.

2) Such conspiracy was accompanied by overt acts designed to accomplish such purpose.

3) Such overt acts proximately caused Fontaine's Clinics a loss of monetary reward from its business activities.

4) Fontaine's active clientele as evidenced by cards containing name, address and telephone number was a trade secret.

5) Catherine Ward used a list of names compiled from such cards to solicit business for A.S.E.

6) Which proximately caused Fontaine's a loss of monetary reward from its business activities.

7) In the amount of $25,000.

8) The overt acts inquired about in issues 1 and 5 were motivated by malice on the part of Dr. Ruth Jackson.

9) For which $65,000 exemplary damages should be awarded against Dr. Ruth Jackson.

10) Margaret Hanson was not motivated by malice.

12) Catherine Ward was motivated by malice.

13) For which $1000 exemplary damages should be awarded against Catherine Ward.

14) Gwynn Gambrell was motivated by malice.

15) For which $250 exemplary damages should be awarded againt Gwynn Gambrell.

The trial court overruled Defendants' Motions for directed verdict and judgment non obstante veredicto, and granted Plaintiff's Motion for judgment and rendered judgment plaintiff recover: $90,000 ($25,000 actual and $65,000 exemplary damages) from Defendant Dr. Ruth Jackson, $1000 from Defendant Ward, and $250. from Defendant Gambrell. Defendants filed Motion and Amended Motion for new trial. The trial court directed plaintiff to file remittitur of $32,500 of the exemplary damages awarded against Dr. Ruth Jackson, which remittitur was filed by plaintiff, reserving the right to complain of same on appeal. The trial court then overruled Defendants' Motion for new trial, but did not reform the judgment in conformity to such remittitur.

Defendants appeal on 52 points asserting:

1) There is no evidence that Fontaine's sustained any damage caused by defendants' alleged overt acts; (and no evidence and insufficient evidence to sustain the jury's answer to issue 3, 6, 7.)

2) There is no evidence and insufficient evidence to sustain the jury's answer to issues 8 and 9.

3) The award of $25,000 actual and $65,000 exemplary damages against Dr. Ruth Jackson is excessive.

4) Exemplary damages awarded against Defendants Ward and Gambrell are error as there is no judgment for actual damages against them.

5) The trial court erred in admitting into evidence plaintiff's exhibits 42, 43, 44, 45, 46, 47, 48, 49, 50, and 51.

6) The trial court erred in rendering $25,000 actual damages against Dr. Ruth Jackson alone, while rendering no judgment against the other coconspirators for actual damages, as this deprives Dr. Jackson of the right of indemnity or contribution of funds that may be paid by Dr. Jackson in discharge of liability of the other 3 defendants.

7) The trial court erred in failing to reduce the exemplary damages against Dr. Ruth Jackson from $65,000 to $32,500 pursuant to the court's suggestion of remittitur, which plaintiff complied with.

Plaintiff by cross point asserts the trial court erred in requiring a remittitur of $32,500.

Plaintiff Fontaine's operated three clinics: two in Dallas and one in Ft. Worth for the removal of unwanted hair from the human body by means of electrolysis. In June 1969, Catherine Ward went to work at Fontaine's as a manager. She had con-

trol and management of the Preston Center Clinic in Dallas, was in charge of all records, technicians, patients, and the selling of patients. As manager she had direct contact with every client or prospective client who came to the clinic. Mrs. Ward became acquainted with a patient, Dr. Ruth Jackson, an orthopedic surgeon, and later Dr. Jackson treated Mrs. Ward for a neck injury. Dr. Jackson learned from Mrs. Ward that Mrs. Ward was disappointed in the size of her commission check, and asked her how much it would cost to put in a clinic, and to check on a possible location. Dr. Jackson arranged several meetings at her home with Mrs. Ward, a Mr. Charette and Margaret Hanson, at which time plans were made in regard to the new venture. Dr. Jackson secured a charter for a corporation called A.S.E. Dermatetics, and was owner of 100% of the stock. She opened A.S.E. at 3620 Fairmount Street as a clinic to remove unwanted human hair and induced Mrs. Ward to leave Fontaine's and join A.S.E. She requested Mrs. Ward to find out how many patients she could bring with her. Dr. Jackson discussed with Mrs. Ward the possibility of patients following the technicians who were going to leave Fontaine's for A.S.E. Mrs. Ward, at Dr. Jackson's insistence contacted four of Fontaine's technicians for the purpose of inducing them to go with her to A.S.E., and Janis Story and Gwynn Gambrell did go. Dr. Jackson was informed all Fontaine's employees had a written employment agreement with Fontaine's not to compete within two years with Fontaine's in Dallas, after leaving Fontaine's. Dr. Jackson examined a copy of the agreement furnished her by Mrs. Ward and told Mrs. Ward her attorneys had examined it, and it "wouldn't hold up in court." Mrs. Ward talked with 80% of the patients of Fontaine's informing them of her new location, and informed them per Dr. Jackson's instructions, that A.S.E. would negotiate with them if they had credit remaining at Fontaine's. On the last night of Mrs. Ward's employment at Fontaine's, May 2, 1970, Dr. Jackson, Mr. Charette, Mrs. Ward and Linda Butcher, a technician at Fontaine's, stayed after hours and in secret copied the names of customers from Fontaine's active customers' files. Mrs. Ward later used this list to solicit customers for A.S.E. A.S.E. treated 10 or 15 of Fontaine's former patients before being enjoined by the court, and had only one patient who was not a previous patient of Fontaine's. Derogatory statements were made about Fontaine's to each of these patients.

Defendants' contention 1 asserts there is no evidence that Fontaine's sustained damage by defendants' acts, and there is no evidence Fontaine's suffered monetary loss of $25,000.

Fontaine's was a ten-year old business which had grown consistently since it was founded. Dr. Jackson founded a competing clinic to Fontaine's, persuaded Fontaine's manager, Mrs. Ward, to come to the new clinic along with two of Fontaine's technicians; Mrs. Ward contacted 80% of Fontaine's customers; Mrs. Ward and Dr. Jackson with two others copied Fontaine's customer list at night at Fontaine's office, and Mrs. Ward used it to solicit Fontaine's customers for A.S.E. There is evidence the customer list copied by defendants cost $50,000, that sales decreased some $26,000 at Fontaine's during the period May 1–December 31, 1970 from the preceding year. Business declined only at the Dallas operation and not in Ft. Worth.

■ From the foregoing it is clear and certain that plaintiff suffered legal damages. The evidence presented a question of fact, and we think it ample and sufficient that Fontaine's sustained damages by reason of defendants' acts, and to sustain the jury's answers to issues 3, 6, and 7. Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097.

■ Contention 2 asserts there is no evidence and insufficient evidence to sustain the jury's answers to issues 8 and 9,

finding Dr. Ruth Jackson motivated by malice, and awarding $65,000 exemplary damage; and contention 3 asserts that the award of $25,000 actual and $65,000 exemplary damages is excessive.

Dr. Jackson employed plaintiff's manager and technicians knowing they were under a contract not to compete with plaintiff; copied plaintiff's patient list; and caused it to be used to secure plaintiff's customers. Such constitutes such bad or evil motives or such gross indifference to the rights of others as amounts to a wilfull and wanton act, done without just cause or excuse. The evidence is ample to sustain the jury's answer to issue 8. Issue 9 awarded plaintiff $65,000 exemplary damages. We think the evidence sufficient to sustain such award only to the extent of $32,500 and that the award of $65,000 is excessive in the amount of $32,500. The award of $25,000 actual damages to plaintiff is not excessive.

■ Contention 6 complains of the trial court rendering $25,000 actual damages against Dr. Ruth Jackson and no judgment against her co-conspirators; and contention 4 complains of the award of exemplary damages against Defendants Ward and Gambrell when no judgment for actual damages was rendered against them. We think the trial court should have rendered judgment for the $25,000 actual damages jointly and severally against Ruth Jackson, Catherine Ward, Gwynn Gambrell and Margaret Hanson, and that the judgment should be reformed to such extent. With the award of actual damages against Defendants Ward and Gambrell, the award of exemplary damages against them under the record is proper.

Contention 5 complains of the trial court's admission into evidence plaintiff's exhibits 42 through 51. Such exhibits were summaries of the gross expense, net expense, personnel, advertising expense, rent, salaries, and income, prepared from the books and records of Fontaine's. All records of which the exhibits were summaries were kept under the president of Fontaine's direct supervision and control, and were brought into the courtroom and tendered to defendants, or any qualified person for such examination as they deemed appropriate to make.

■ A tabulated schedule or summary of voluminous records, may in the discretion of the trial court, be admitted to expedite the trial and aid the trier of fact, assuming that the records themselves are admissible. Cooper Petroleum Co. v. La-Gloria Oil and Gas Co., Tex., 436 S.W.2d 889.

■ The trial court properly admitted the exhibits.

■ Contention 7 complains of the failure of the trial court to reduce the exemplary damages against Dr. Ruth Jackson pursuant to remittitur of $32,500 filed by the plaintiff.

The trial court determined, as has this court that the jury's award of $65,000 exemplary damages was excessive in the amount of $32,500, required a remittitur by plaintiff of $32,500, but did not reduce the judgment against Dr. Jackson by such amount. The trial court should have done this.

The judgment of the trial court is reformed to render judgment against Dr. Ruth Jackson, Catherine Ward, Gwynn Gambrell, and Margaret Hanson, jointly and severally for $25,000; against Dr. Ruth Jackson for $32,500 additional; and against Catherine Ward for $1000 additional; and against Gwynn Gambrell for $250 additional; and as reformed is affirmed.

Except as above provided all points and contentions of appellants are overruled; and appellee's cross point is overruled.

Costs of appeal are taxed against appellee.

Reformed and affirmed.