Dr. Ruth JACKSON, Petitioner,

v.

FONTAINE'S CLINICS, INC., Respondent.

No. B–3472.

Supreme Court of Texas.

July 11, 1973.

Rehearing Denied Oct. 10, 1973.

Burford, Ryburn & Ford, Logan Ford, David Ford Hunt, John F. Harrison, Dallas, for petitioner.

Jerry W. Biesel and George E. Flannigan, Dallas, for respondent.

McGEE, Justice.

Fontaine's Clinics, Inc., brought this suit against Dr. Ruth Jackson, Catherine Ward, Gwynne Gambrell, Margaret Hanson, and A.S.E. Dermatetics Clinic, Inc. Fontaine's is a corporation engaged primarily in the business of removing unwanted hair from the human body by means of electrolysis.

Dr. Jackson, a former patient of Fontaine's, is the president of A.S.E., which is a corporation in competition with Fontaine's. Ward, Gambrell and Hanson were once employees of Fontaine's, but they left the employ of Fontaine's and became associated with A.S.E.

For cause of action Fontaine's alleged that the individual defendants conspired to commit acts and that the defendants jointly and individually committed acts designed to wrongfully damage the business and reputation of Fontaine's. Among the various overt acts charged against the defendants, it was specifically alleged that Ward, Gambrell and Hanson, while they were employees of Fontaine's but at the urging of Jackson, intentionally made false disparaging statements about the services received at Fontaine's to their patients for the purpose of inducing these patients to take their business to A.S.E. Fontaine's alleged further that Jackson and Ward (while an employee of Fontaine's) surreptitiously copied from Fontaine's files trade secrets consisting of the names and addresses of patients and confidential data pertaining to those patients, for the purpose of advertising to them the merits of A.S.E. Fontaine's prayed for judgment against all defendants jointly and severally.

The jury found that Jackson, Ward, Gambrell and Hanson conspired to damage Fontaine's business; that the conspiracy was accompanied by overt acts designed to accomplish the purpose of the conspiracy; and that Jackson, Ward and Gambrell were motivated by malice. The jury also found that the patient data, which was copied from Fontaine's files, constituted trade secrets and that Defendant Ward used such data to solicit business for A.S.E. As actual damages it was found that the sum of $25,000 would reasonably compensate Fontaine's for the injury received.

The trial court rendered judgment for Fontaine's as follows: against Ruth Jackson for $90,000 ($25,000 plus $65,000, which the jury awarded as exemplary damages against Jackson); against Catherine

Ward for $1000, which the jury awarded as exemplary damages against Ward; and against Gwynne Gambrell for $250, which the jury awarded as exemplary damages against Gambrell. A.S.E.'s motion for judgment non obstante veredicto was sustained by the trial court. Defendant Ruth Jackson is the only party who appealed from the trial court's judgment.

The court of civil appeals affirmed the trial court's judgment against Jackson after reforming it to the extent of reducing the exemplary damages recovered against her by $32,500. 481 S.W.2d 934.

The special issue pertaining to actual damages was submitted as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence, will fairly and reasonably compensate Fontaine's Clinics for injury, if any, received by reason of the overt acts inquired about in Special Issue No. 3, if you have so found, and/or the use of the list of names compiled from plaintiffs' clientele cards, if you have so found?

"In answering this issue you are instructed that you may take into consideration the following matters or elements as you find are established by a preponderance of the evidence, and none other:

"(a) the reasonable cash value, if any, of the loss of *monetary reward* from Fontaine's Clinics, Inc.'s business activities."

"(b) you are further instructed that you will not allow any sum of money for loss of monetary reward from Fontaine's Clinics, Inc.'s business activities resulting from decreased advertising and time devoted to the preparation of this suit for submission to the jury, if either happened." [Emphasis added]

Petitioner contends that this submission was reversible error because the issue is so broad and general that it permits the jury to speculate and to find losses not pleaded or not supported by evidence. We sustain this contention.

■■ Damages must be measured by a legal standard, and that standard must be used to guide the fact finder in determining what sum would compensate the injured party. Fontaine's pleaded that the acts of the defendants "would prevent plaintiff from deriving the normal pecuniary reward from its business activities that it otherwise would have been entitled to attain." Although it is not entirely clear from a reading of Fontaine's pleadings, it appears from the foregoing quotation that Fontaine's sought recovery based on its loss of net profits. However, the jury was given no guideline for determining a loss of net profits. Manifestly, the phrase "monetary reward" does not describe net profits, and no other instruction was given connecting that phrase with net profits or with any other recognized measure of damages.

We hold that this submission was fatally defective, because it simply failed to guide the jury to a finding on *any proper legal measure of damages.* International-Great Northern R. Co. v. Casey, 46 S.W.2d 669 (Tex.Com.App.1932, holding adopted).

Although the above error alone requires reversal of the judgments below against Ruth Jackson, in view of possible retrial, we will briefly discuss other of petitioner's points on which the writ of error was granted.

■ Witnesses Sandor, Harrison and Travis who at the time of trial were employees of Fontaine's testified that patients of Fontaine's had told them that Defendants Ward, Gambrell and Hanson had made derogatory remarks about the services available at Fontaine's. Petitioner objected to the admissibility of this testimony on the ground that it was hearsay. The objections were overruled, and the respondent argues properly so because the testimony was offered merely to show that the defendants had made the remarks rather than to show the truth of the substance of the defendants' remarks. Respondent's own argument demonstrates that the witnesses' testimony was offered to prove the truth of what the patients told the witnesses, i.e., that the defendants made the derogatory remarks about Fontaine's. Thus, the testimony of the witnesses was clearly hearsay, and the objections should have been sustained.

■ Petitioner contends that certain of plaintiff's documentary evidence, exhibits 42–51, should not have been admitted because the exhibits were hearsay. The exhibits were admitted as exceptions to the rule of hearsay exclusion on the theory that they were business records or summaries of businesss records. Since the cause against petitioner must be reversed on points previously discussed, we will not treat this point at length. The summaries were offered to prove the acts, events or conditions recorded in original business records which the exhibits purported to summarize. We are not satisfied from this record that a proper predicate was shown for the admissibility of the summaries. The hearsay objections should have been sustained.

■ There was evidence that the decline in Fontaine's business was due to causes unrelated to the activity of the defendants. Petitioner requested special issues inquiring if the business losses of Fontaine's, if any, were the sole proximate result of (1) acts or conduct of Fontaine's and (2) conditions beyond the control of any party. The trial court refused to submit those issues, and petitioner contends that such action was error. This is not a question of the sole proximate cause issue as contained in the negligence cases cited by petitioner. To illustrate, a defendant's issue in a negligence case that the occurrence was proximately caused solely by something other than the defendant's acts or omissions rebuts that particular defendant's liability. In this intentional tort case, the issues requested would rebut the damages resulting from the defendants' acts. We have concluded that if the evidence raises these matters on a new trial, they should be

presented to the jury in the form of instructions accompanying the damage issue rather than in the form of separate special issues. See Yarborough v. Berner, 467 S. W.2d 188 (Tex.1971), and Southwest Bank & Trust Co. v. Executive Sportsman Association, 477 S.W.2d 920 (Tex.Civ.App.1971, writ ref'd n.r.e.).

■ As noted above, the trial court judgment against Ward and Gambrell was for only sums which the jury awarded as exemplary damages against them. It is evident that the judgment did not conform to the verdict with respect to the rendering of actual damages against only one of the four individual defendants. The Plaintiff, Fontaine's, did not complain of that fact in the court of civil appeals. However, in the court of civil appeals the Defendant Jackson assigned as error the failure of the trial court to render judgment on the verdict against her co-defendants for the reason that the judgment deprived her of the right of contribution among joint tortfeasors.[1] Although Jackson prayed for a *rendition* in her favor or a *remand* of the cause for a new trial, in ruling on this point the court of civil appeals held that the trial court's judgment should have been against the four conspirators jointly and severally for actual damages, and the court *reformed* the trial court's judgment accordingly.

Petitioner Jackson urges that the court of civil appeals erred in reforming the trial court's judgment, or in other words, that the court of civil appeals erred in failing to sustain its contention that the trial court erred in failing to render judgment for actual damages against Ward, Gambrell and Hanson because such failure deprived Jackson of contribution.

It is undisputed that Fontaine's did not appeal from the trial court's judgment.

Petitioner's point of error to the court of civil appeals that the trial court erred in not rendering judgment against Ward, Gambrell and Hanson was apparently assigned in an attempt to gain a retrial of Fontaine's claim against Jackson. However, the error asserted, if error, does not affect that part of the judgment rendered for Fontaine's against Jackson. Consequently, petitioner's point on appeal to the court of civil appeals and to this court urges nothing but an *adverse claim* against her co-defendants, i.e., that a new trial should be granted in order that Jackson might establish their joint liability for the actual damages suffered by Fontaine's.

Since Ward, Gambrell and Hanson were not named as obligees in the appeal bond filed by Jackson, the court of civil appeals had no jurisdiction to consider Jackson's claim against them on appeal. Classen v. Benfer, 144 S.W.2d 633 (Tex.Civ.App. 1940, writ dism'd jdgmt cor.). For the same reason, Jackson's point in this regard cannot be considered by this court.

■ Ward, Gambrell and Hanson are not petitioners before this court and consequently there is no proper assignment of error that the court of civil appeals erred in rendering the judgment for $25,000 against them. However, the action of the court of civil appeals in rendering judgment by reformation against these defendants, over whom that court had no jurisdiction, was fundamental error for which this court may reverse the court of civil appeals' judgment, even in the absence of a proper assignment. McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S. W.2d 265 (1957). We will reverse the court of civil appeals' judgment against Ward, Gambrell and Hanson.

■ Petitioner argues that the failure of Fontaine's to attack the trial court's

---

[1]. Art. 2212, Vernon's Ann.Tex.Rev.Civ. Stat. provides in part that "any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment."

judgment amounts to a release of liability as to three-fourths of the actual damages. If that were true, Jackson would be liable for only one-fourth of the actual damages. We cannot accept this view. A release of liability partakes of certain elements of contract, e. g., a mutual intent. Loy v. Kuykendall, 347 S.W.2d 726 (Tex.Civ. App.1961, writ ref'd n.r.e.). There is no evidence of such an element in this record.

 Petitioner additionally contended in the court of civil appeals (apparently for the benefit of her non-appealing co-defendants Ward and Gambrell) that the trial court's judgment against Ward and Gambrell for exemplary damages was erroneous because there had been no judgment against them for actual damages. With the reformation as to actual damages, the court of civil appeals held that the trial court's judgment as to exemplary damages against Ward and Gambrell was not error. Jackson complains to this court of the lower courts' rulings in this regard. The trial court's judgment for exemplary damages against Ward and Gambrell does not in any way affect the judgment rendered against Jackson. A petitioner may not complain of errors which do not injuriously affect him or which merely affect the rights of others. Shell Petroleum Corporation v. Grays, 131 Tex. 515, 114 S.W.2d 869 (1938).

 Petitioner contends that the rights of all the defendants are so interwoven and dependent on one another that the cause against the non-appealing defendants should also be remanded.[2] Although the conduct of the defendants which gave rise to this suit may have been interwoven, it would appear that the rights of the parties at this point are very distinct. For example, Defendant Hanson has no judgment against her and a new trial would be of no benefit to her. Defendants Ward and Gambrell suffered judgments for only relatively small sums, and a new trial could re-

sult in judgments against them for a substantially larger sum. We conclude that the trial court's judgment against Ward, Gambrell and Hanson should not be reversed merely because the single petitioner, Jackson, has demonstrated reversible error as to the judgment against her.

The judgment of the court of civil appeals is reversed. The trial court's judgment against Jackson is reversed, and the cause against Jackson is severed and remanded to the trial court. The trial court's judgment against the non-appealing Defendants Ward, Gambrell and Hanson and in favor of Defendant A.S.E. remains undisturbed.

---

2. *See* Lockhart, State Treasurer et al. v. A. W. Snyder & Co. et al., 139 Tex. 411, 163 S.W. 2d 385 (Tex.1942).