In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-305 CV


____________________



LIBERTY MUTUAL INSURANCE CO., Appellant



V.



MARIO CAMACHO, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 01-10-06715-CV






 OPINION 


 We resolve two principal questions in this appeal. First, we determine if the evidence
in this workers' compensation case is legally sufficient to support the jury's finding that
Mario Camacho suffered a skull injury. Second, we decide whether the trial court improperly
instructed the jury to give the decision of the Texas Workers' Compensation Commission no
special weight. We answer both questions in the affirmative and reverse and remand the case
for a new trial. 

TRIAL TESTIMONY AND VERDICT

 Camacho was a rancher with more than twenty years' experience at the time of his
injury and a long-term employee of JMR Ranching. In September 1991, Camacho's horse
reared up and struck him in the face. He fell from the horse to the ground. Selma Steele, co-owner of the ranch, received a telephone call about Camacho's accident and arrived at the
scene shortly thereafter. When she arrived, Camacho "had a big knot on his head and a knot
over the left eye and his nose was bleeding." While on the way to Steele's home in her car,
Camacho fell over and appeared to have gone to sleep. Steele took Camacho to the hospital. 
 Camacho was initially treated at the Tomball Regional Hospital Emergency Room. 
Dr. John Sanders, the emergency room physician, diagnosed Camacho as having suffered a
concussion. Dr. Sanders ordered the following tests: (1) a CT scan of the head, without
contrast, which was reported as normal; (2) a bone scan, which was reported as normal with
the exception of degenerative changes in the cervical spine; (3) an x-ray of the nasal bones,
which was reported as showing no evidence of fracture; and (4) an x-ray of the cervical
spine, which was reported as showing no acute fracture. 

 Dr. Susan Garrison, a physician certified by the American Board of Physical Medicine
and Rehabilitation, reviewed Camacho's records at Liberty Mutual's request in 2005 in order
to address whether Camacho suffered a skull injury due to his 1991 fall. Dr. Garrison, the
only medical doctor to testify at trial, stated that Camacho's tests, x-rays, bone scans, and CT
scans showed "no evidence of injury to the skull as a result of that accident." In her opinion,
Camacho had a closed head injury but he "did not have an injury to the skull." Dr. Garrison
clarified that her opinions were based upon the reports of the tests administered at Tomball
Regional because the actual films of the tests had been destroyed by the hospital. Dr.
Garrison further testified that because the bone scan was done with contrast material, if
Camacho had suffered a bone bruise of the skull, the test "would have lighted up, and it
didn't light up." Dr. Garrison did not see or treat Camacho. 

 Dr. Richard Pollock, a neuropsychologist, testified that he began treating Camacho
in 1994. According to Dr. Pollock, Camacho's hospital records reflected that he suffered a
closed head injury in the accident. Dr. Pollock categorized Camacho as an incurable
imbecile and testified that Camacho's condition was permanent. Dr. Pollock also opined that
Camacho "is not capable of living independently." 

 Camacho testified at trial regarding the effects of his injury on his ability to work and
to engage in daily activities of living. He did not testify about how his injury occurred.

 At the conclusion of the trial, the trial court submitted one issue to the jury
accompanied by instructions. The court submitted the following instructions pertinent to this
appeal:

 

You are instructed that the Texas Workers' Compensation Commission
Appeals found that the Plaintiff did not sustain an injury to the skull that
resulted in incurable imbecility. The party dissatisfied with the decision of the
Appeals Panel may file suit in District Court for Judicial Review. The
decisions of the Texas Workers' Compensation Commission are to be given
no special weight. You, as jurors, decide the weight and credibility of the
evidence submitted before you. The jury returned its verdict, finding that Camacho "sustained an injury to his skull
that resulted in incurable imbecility." Subsequently, the trial court awarded Camacho
lifetime income benefits in accordance with the jury's verdict. 



SKULL INJURY ISSUE

Liberty Mutual contends that Camacho failed to present legally sufficient evidence
establishing that he suffered a skull injury. Although at trial it challenged whether
Camacho's injury caused his imbecility, on appeal, Liberty Mutual does not challenge that
aspect of the jury's finding. Rather, Liberty Mutual argues that the lifetime benefits
provision required Camacho to prove an injury to the bones of his skull in order to recover
lifetime benefits. The statutory language in effect at the time of Camacho's injury provided,
in pertinent part:

(a) Income benefits shall be paid until the death of the employee for:

 . . . .


 (6) an injury to the skull resulting in incurable insanity or imbecility.


Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1 § 4.31, 1989 Tex. Gen. Laws 42 (amended
1997) (current version at Tex. Lab. Code Ann. § 408.161(6) (Vernon 2006)). 

 Liberty Mutual contends that an injury to the "skull" is an absolute requirement under
the version of the statute at issue, and that a brain or head injury, without a skull injury, is
insufficient. (1) In support of its argument, Liberty Mutual cites Barchus v. State Farm Fire
& Casualty Co., 167 S.W.3d 575 (Tex. App.-Houston [14th Dist.] 2005, pet. denied), and
asserts that the Fourteenth Court of Appeals decided that the statute at issue requires an
injury to the skull. However, in Barchus, the trial court's finding that Barchus had sustained
an injury to his skull was not challenged on appeal. Id. at 580. Rather, the issue addressed 
was whether the Compensation Act required the claimant to prove that his skull had been
fractured in order to receive lifetime income benefits. See id. In contrast, the case before us
requires that we interpret the statute's meaning in its use of the term "skull" in order to
determine whether a blow to the head, which results in imbecility, fulfills the requirements
of the statute. 

Standard of Review

 The jury found that Camacho sustained an injury to his skull that resulted in incurable
imbecility. Because Camacho's claim was denied at the administrative level, Camacho had
the burden to prove by a preponderance of the evidence that he sustained an injury to his
skull. Tex. Lab. Code Ann. § 410.303 (Vernon 2006). In reviewing a jury verdict for legal
sufficiency, we consider all of the evidence in the light most favorable to the prevailing party,
"crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence
unless reasonable jurors could not." City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex.
2005); Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex.
1998). Thus, on this record we must credit favorable evidence for Camacho if reasonable
jurors could, and disregard evidence contrary to the jury's finding that Camacho suffered a
skull injury, unless reasonable jurors could not.

Statutory Construction

 To resolve this appeal, we must determine whether a severe blow to the head causing
bruising and a concussion that renders an employee an imbecile constitutes a skull injury for
purposes of the lifetime benefits provision of the Workers' Compensation Act. See Act of
Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1 § 4.31, 1989 Tex. Gen. Laws 42 (amended 1997). 
The Act has never defined the term "skull." See id.; see also Tex. Lab. Code Ann. §
401.011(Vernon 2006). 

 A court's objective in construing a statute is to "determine and give effect to the
Legislature's intent." Nat'l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000). 
When the meaning of a word in a statute is not ambiguous, we ordinarily give the word its
common meaning. Id.; Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864,
865 (Tex. 1999). In ascertaining legislative intent, our review is not confined to isolated 
words, phrases, or clauses; rather, we examine the entire act. Meritor Auto., Inc. v. Ruan
Leasing Co., 44 S.W.3d 86, 90 (Tex. 2001); see Tex. Gov't Code Ann. § 311.011(a)
(Vernon 2005) (instructing courts to construe words and phrases in context). 

 The Code Construction Act lists factors that may be considered in construing a statute,
whether or not the statute is ambiguous on its face. Tex. Gov't Code Ann. § 311.023
(Vernon 2005). These factors include, among other things, (1) the statute's objectives; (2)
the circumstances under which the statute was enacted; (3) the statute's legislative history;
(4) common law, former law, and similar provisions; (5) the consequences of the statutory
construction; and (6) administrative construction of the statute. Id. § 311.023(1)-(6); In re
Canales, 52 S.W.3d 698, 702 (Tex. 2001). We also presume that the Legislature intended
a just and reasonable result. Tex. Gov't Code Ann. § 311.021(3) (Vernon 2005); Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001).

 Commonly used dictionaries assist in determining a word's common use. See
generally Powell v. Stover, 165 S.W.3d 322, 326 (Tex. 2005); Tex. Dep't of Protective &
Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 196 (Tex. 2004). One
dictionary defines "skull" to mean:

 1 a: the skeleton of the head of a vertebrate : the bony or
cartilaginous case or framework that encloses and protects the
brain and chief sense organs, supports the jaws, . . . and consists
of the cranium, the bony capsules of the nose, ear, and eye, and
the jaws b: the cranium together with those bones that are
immovably fused with it (as the mammalian upper jaw) 2 : the
seat of understanding or intelligence : MIND . . . .

 

Webster's Third New International Dictionary 2135 (2002). In construing a statute,
we are also required to examine the context of the statute and the Legislature's intent. The
context of the statute at issue does not limit itself to injuries to the bones of the skull; in fact,
an injury to the bones of the skull that did not result in imbecility would not result in the
award of lifetime income benefits. Thus, the statute appears to be triggered by two events:
a blow to the head and an injury to the brain that results in imbecility or insanity. Thus, the
context of the statute supports defining the term "skull" in a manner that includes a blow to
the head that causes imbecility.

 "The primary purpose of the Texas Workers' Compensation Act is to benefit and
protect injured employees." Barchus, 167 S.W.3d at 578. If we accepted Liberty Mutual's
contention regarding the meaning of the word "skull," imbeciles receiving a fracture or bone
bruise would receive lifetime benefits, while imbeciles whose skulls had been harmed by a
blow but who had no demonstrable bone injury would not. Since the purpose of the statute
is to benefit and protect injured workers, and because both of these classes suffer from
severe, permanent, and disabling injuries, it appears more consistent with the purposes of the
Act to apply the broader definition of the term "skull" to allow the recovery of lifetime
benefits to both classes of injured employees. "It is well settled that the Workers'
Compensation Act should be liberally construed in favor of the worker." Lujan v. Houston
Gen. Ins. Co., 756 S.W.2d 295, 297 (Tex. 1988) (citing Hargrove v. Trinity Universal Ins.
Co., 152 Tex. 243, 245, 256 S.W.2d 73, 75 (1953)). Construing the term "skull" to require
an injury to the bones of the skull, as opposed to an injury to "the seat of understanding,"
would not protect workers who receive severe blows to the head but who do not suffer a skull
fracture or other identifiable injury to the bones of the skull. 

 Liberty Mutual argues that we should utilize the more narrow definition of the term
"skull" used by the Texas Workers' Compensation Commission. While we generally
consider an administrative agency's interpretation of a term, it is not binding and carries no
presumption of validity. Barchus, 167 S.W.3d at 578. The Barchus court stated: "To the
extent the Commission has concluded that a claimant must show evidence that he fractured
his skull to be entitled to [lifetime income benefits], we find that such conclusion is
inconsistent with the plain language of the statute." Id. at 580. We agree that adopting a
narrow definition of "skull injury" that would require evidence of skeletal damage is
inconsistent with the Legislature's intent to compensate for life severely injured employees
who are injured directly by a blow to their head. See id. 

 Finally, we note that the lifetime benefits provision at issue requires proof of an
"injury" to the skull. Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1 § 4.31, 1989 Tex. Gen.
Laws 42 (amended 1997). The term "injury" was broadly defined as "damage or harm to the
physical structure of the body and those diseases or infections naturally resulting from the
damage or harm." Id., 1989 Tex. Gen. Laws 3 (see current version at Tex. Lab. Code Ann.
§ 401.011(26) (Vernon 2006) wherein the term is similarly defined). In this case, it was not
disputed that Camacho suffered a closed head injury. A blow to the head that causes bruising
and unconsciousness and results in a diagnosis of a closed head injury is, in our opinion,
sufficient harm to the skull to meet this statute's requirement of a skull injury. Therefore,
we overrule Liberty Mutual's legal sufficiency challenge to the jury's finding that Camacho
sustained a skull injury. Issue one is overruled. 

JURY INSTRUCTION

 In issue three, Liberty Mutual asserts that the trial judge improperly instructed the jury
to "give no special weight" to the decision of the Texas Workers' Compensation
Commission. Camacho responds that the trial court's instruction "was a correct statement
of the law." We review whether a trial court erred in giving a jury instruction under an abuse
of discretion standard. Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex.
1990).

 In jury trials, the Workers' Compensation Act requires the trial court to inform the
jury "of the appeals panel decision on each disputed issue . . . that is submitted to the jury." 
Tex. Lab. Code Ann. § 410.304(a) (Vernon 2006). Following the Legislature's enactment
of the Act, the Texas Supreme Court in Texas Workers' Compensation Commission v.
Garcia, 893 S.W.2d 504, 528 (Tex. 1995), rejected a challenge to the constitutionality of this
particular provision of the Act. The Supreme Court stated:


 The Act does specify certain limiting procedures not found in a pure trial
de novo. First, the jury is informed of the Commission's decision. 
Because the jury is not required to accord that decision any particular
weight, however, this procedure does not impinge on the jury's
discretion in deciding the relevant factual issues. We hold that this
procedure does not violate a claimant's right to trial by jury.

Id. The Supreme Court stated that the jury is not required to give the decision any "particular
weight;" however, the Court did not affirmatively direct that juries are to give appeals-panel
decisions "no special weight." Id. Further, the Supreme Court did not direct trial courts to
give an instruction to the jury regarding the weight, or lack thereof, of the appeals-panel's
decision. Id.

 The Supreme Court's language in Garcia suggests that a juror is free to give the
appeals-panel decision no weight, some weight, or significant weight, depending on that
particular juror's view of the evidence. See id. Although the jury is not bound to follow the
appeals-panel decision, it may give it weight if it so chooses. In this case, however, by
affirmatively instructing the jury to give the decision "no special weight," the jurors were
instructed to all but disregard the decision of the appeals-panel. There is a material
difference between an instruction that leaves the jury free to accord the decision of the
appeals-panel the weight the jury thinks it deserves, and an instruction that tells the jury to
discount, if not disregard, the decision. Lemos v. Montez, 680 S.W.2d 798, 801 (Tex. 1984)
("There is a material difference between an instruction that the happening 'is not' negligence
and an instruction that the happening 'does not necessarily imply' negligence."). "The jury
does not need either instruction. This court has treated addenda to the charge as
impermissible comments that tilt or nudge the jury one way or the other." Id. 

 An instruction by a trial court that misstates the law or misleads the jury is improper. 
Steak & Ale of Tex., Inc. v. Borneman, 62 S.W.3d 898, 905 (Tex. App.-Fort Worth 2001, no
pet.) (citing Jackson v. Fontaine's Clinics, Inc., 499 S.W.2d 87, 90 (Tex. 1973)). "A
requested instruction that is affirmatively incorrect is not 'substantially correct' as that term
is used in Rule 278's requirement that proposed questions and instructions be substantially
correct." Baylor Univ. v. Coley, 50 Tex. Sup. Ct. J. 621, 2007 WL 1162489, at *7 (Tex. April
20, 2007) (Johnson, J., concurring). Moreover, the Rules of Civil Procedure prohibit the trial
court from making a "comment directly on the weight of the evidence" in its jury charge. See
Tex. R. Civ. P. 277. 

 In some instances, it is error for the trial court to give the jury an instruction even
when it is a substantially correct statement of the law. For example, in Acord v. General
Motors Corporation, 669 S.W.2d 111 (Tex. 1984), the Supreme Court reversed a jury verdict
based on charge error when the trial court instructed the jury that a manufacturer is not an
insurer of the product it designs. 669 S.W.2d at 113, 116. Although the instruction was a
correct statement of law, the Supreme Court found harmful error and said: "In a closely
contested case as is the one at bar, to single out for the jury that General Motors was neither
an insurer nor a guarantor of a perfect or accident-proof product, which incorporated ultimate
safety features, was a comment on the case as a whole. As such, it constituted harmful
error." Id. at 116.

 We hold that the instruction submitted by the trial court in this case constituted an
impermissible comment that tilted or nudged the jury's consideration of the decision of the
appeals-panel. The instruction to the jury singled out one piece of evidence admitted at trial,
and implied that the jury should treat the appeals-panel decision differently than it was to
treat the other evidence admitted at trial; in that way, the instruction served to comment on
the case as a whole. We further hold that the instruction the trial court submitted was not a
substantially correct statement of law. For these two reasons, we conclude the trial court
erred in instructing the jury to give the appeals-panel decision "no special weight."

HARM

 In cases involving an incorrect jury instruction, an appeals court reverses only if the
instruction "'was reasonably calculated to and probably did cause the rendition of an
improper judgment.'" Bed, Bath & Beyond, Inc. v. Urista, 211 S.W.3d 753, 757 (Tex. 2006)
(quoting Reinhart v. Young, 906 S.W.2d 471, 473 (Tex. 1995)). We examine the entire
record to evaluate whether the instruction probably caused the rendition of an improper
verdict. Id.

 The appeals-panel decision involved both the issue of Camacho's injury and the issue
of his imbecility. The issue at trial regarding Camacho's imbecility was closely contested. 
Dr. Garrison testified that Camacho was not an imbecile. The jury also heard Dr. Pollock's
testimony that Camacho's testing showed that he functioned below a first grade level and that
he had an IQ score in the upper 60's. Dr. Pollock additionally testified that Camacho was not
capable of independent living because of his severe cognitive impairment and that he
functioned at an imbecilic level. However, Dr. Pollock acknowledged that the records of
another neuropsychologist contained a contrary opinion that Camacho did not suffer from
incurable imbecility. Liberty Mutual's evidence also included a letter from Dr. Francisco
Perez, a neuropsychologist. Dr. Perez's letter states, "I don't believe there is any evidence
of a cerebral dysfunction or any sequela from a head injury." The record also contains a
report by Dr. Jeremiah Twomey, who practices occupational medicine, in which he opined, 
"I do not feel that the records I reviewed qualify him for lifetime benefits on the basis of
psychological impairment to the level of imbecility." Finally, the report of Dr. John Cassidy,
a psychiatrist, states: "This patient does not meet [the] criteria of statute 408.161 (a) (6) of
the TWCC Act for incurable insanity or imbecility." 

 Camacho also addressed his physical limitations during his testimony at trial. 
Camacho testified that he continued to drive on the ranch, but not in the city, and that he
could no longer train horses. Camacho indicated that he could bathe and dress himself,
saddle and water horses, sometimes feed the cattle, load light things, participate in moving
cattle from one pen to another, and assist in taking cattle to auctions. 

 The trial court instructed the jury that an imbecile was "a mentally deficient person,
especially a feebleminded person having a mental age of three to seven years and requiring
supervision in the performance of routine daily tasks or caring for himself." From the above
discussion, it is apparent that the evidence on whether Camacho functioned as an imbecile
conflicted. 

 The purpose of instructing the jury on the decision of the appeals-panel distinguishes
it from cases when courts have found general instructions to the jury improper, but
nevertheless, harmless. See generally Urista, 211 S.W.3d at 756 (harmless error rule applied
to improper submission of unavoidable accident instruction). In this case, the instruction
regards a specific piece of evidence: the appeals-panel decision. Because the instruction
applies to specific evidence, there is a danger that the jury may infer from the instruction
given here, that the trial judge disagrees with the appeals-panel's resolution of the dispute. 
Also, the instruction in Urista was a substantially correct statement of law; here, the
instruction is not substantially correct. Finally, under Urista's facts, it was unclear whether
the instruction caused the jury to find as it did. See id. at 758. Here, the jury rejected Liberty
Mutual's case that was supported by evidence from several physicians while accepting
Camacho's case that relied on the testimony of one expert witness who was not a physician.

 In conclusion, the jury was entitled to give the decision of the appeals-panel whatever
weight it thought the decision deserved. The trial court's instruction to give the decision "no
special weight" was an incorrect statement of the law and served to nudge the jury toward
responding affirmatively in deciding whether the injury resulted in incurable imbecility. We
hold that the erroneous submission of the instruction at issue probably caused the rendition
of an improper verdict. 

 In issues two, four and five, Liberty Mutual raises additional issues. Because
reviewing these issues would afford Liberty Mutual no greater relief than the relief granted
herein, we do not address these three issues. See Tex. R. App. P. 47.1. Because the trial
judge improperly instructed the jury, we reverse the judgment and remand this cause for the
purpose of a new trial. 

 REVERSED AND REMANDED. 


 ____________________________

 HOLLIS HORTON

 Justice



Submitted on March 22, 2007

Opinion Delivered June 21, 2007

Before Gaultney, Kreger, and Horton, JJ.
1. In contrast, since 1997, the compensation statute provides for lifetime benefits for "a
physically traumatic injury to the brain resulting in incurable insanity or imbecility." Tex.
Lab. Code Ann. § 408.161 (a)(6) (Vernon 2006).