

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00106-CV

IN THE INTEREST OF J.M. AND L.M., CHILDREN

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 19C0017-CCL

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

O P I N I O N

Following a bench trial, the trial court terminated Mother's parental rights to her two minor children, fifteen-year-old J.M. and five-year-old L.M.[1] The trial court found that termination was warranted pursuant to Section 161.001(b)(1), grounds (D), (E), (L), and (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (L), (O) (Supp.).[2] The trial court further found that termination was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (Supp.). The Department of Family and Protective Services (the Department) was appointed permanent managing conservator of the children.

On appeal, Mother claims that (1) the trial court erred in denying her motion to extend the dismissal deadline, (2) the evidence is legally and factually insufficient to support the trial court's finding that termination was in the children's best interests, and (3) the evidence was insufficient to support the current and continued placement of the children with a non-relative, non-designated caregiver. We affirm the trial court's judgment.

## I. Factual and Procedural Background

The Department was called to investigate allegations of child abuse of J.M. by Mother. During a forensic interview, J.M. reported that Mother punched her in the face and chased her with a knife. When J.M. ran into the bathroom to escape from Mother, Mother banged on the bathroom door with the knife. Mother also threatened to kill J.M. and to kill herself and make it look like a murder-suicide. J.M. escaped from the home and found safety in the home of a friend. Mother

---

[1] To protect the confidentiality of the children, we refer to the appellant as "Mother" and to the children by their initials. *See* TEX. R. APP. P. 9.8(b)(2).

[2] The parental rights of L.M.'s and J.M.'s respective fathers were also terminated. Neither father appeals.

was arrested for her assault of J.M., and the children were removed from the home pursuant to an emergency order and were placed in foster care.

L.M., who was four years old at the time of the removal, exhibited obvious developmental delays. She was not yet potty trained and was unable to dress herself, identify primary colors, count to ten, or recite the alphabet. J.M. was L.M.'s primary caregiver due to Mother's neglect of L.M.

During the trial court proceedings, Mother was convicted of a misdemeanor charge of family violence assault against J.M. and was sentenced to serve 110 days in jail.[3]

Mother also pled guilty to three counts of delivery of a controlled substance and two counts of use of a communication device during a drug deal in Miller County, Arkansas. Those pleas were entered on the Monday preceding the final termination hearing. Mother was sentenced to five years' incarceration in the Arkansas Department of Corrections on the Miller County convictions.[4]

## II. Mother's Claim that the Trial Court Erred in Failing to Extend the Dismissal Deadline is Unpreserved

Before the hearing began on November 21, 2019, counsel for Mother stated,

[I] filed a motion for continuance back in August in the case, and the case was moved. I want to re-urge that, I think the completion date is the first part of the year, just so they would have a chance to interact with the Department to see if there is a chance for the family to be a part of the placement here instead of the Department. So just for the record[, I] want to re-urge that, Your Honor.

---

[3]During the period of her 110-day incarceration for family violence assault, Mother could not comply with the court's order for services, and she could not visit her children.

[4]Upon successful completion of drug treatment in a community corrections center, the remainder of Mother's Arkansas sentence would have been suspended.

Counsel then introduced Mother's sister and her husband to the court and indicated that they "[were] very much gainfully employed and capable of taking care of the children and want[ed] that known of record and a chance to interact with the Department to see if that[ was] feasible or in their best interest." Without ruling on Mother's request, the trial court asked the Department to call its first witness.[5]

On appeal, however, Mother claims that the trial court erred in failing "to grant the request to continue the motion for extension based on extenuating circumstances." Mother did not request an extension of the case dismissal date in the trial court. *See* TEX. FAM. CODE ANN. § 263.401(b) (requiring a showing of extraordinary circumstances and best interest of child to extend case beyond one-year dismissal deadline). Instead, Mother re-urged her motion for continuance filed on August 6, 2019. In that motion, Mother sought a continuance of the August 15, 2019, trial date.

"As a prerequisite to appellate review, the record must show that Appellant[] raised the complaint at the trial court by a timely objection, request, or motion that stated the grounds of the complaint, and that the trial court either ruled, or refused to rule, on the complaint." *Orbison v. Ma-Tex Rope Co.*, 553 S.W.3d 17, 37 (Tex. App.—Texarkana 2018, pet. denied) (citing *Jaimes v. Mersha*, No. 06-15-00079-CV, 2016 WL 2609291, at *5 (Tex. App.—Texarkana May 6, 2016, no pet.) (mem. op.)); *see* TEX. R. APP. P. 33.1(a). "Further, '[a]n objection at trial that does not comport with a point of error on appeal preserves nothing for review.'" *Id.* (alteration in original) (quoting *Anderson v. Snoddy*, No. 06-14-00096-CV, 2015 WL 5634564, at *11 (Tex. App.—

---

[5]By proceeding to trial without ruling expressly on Mother's motion for continuance, the trial court implicitly denied Mother's motion. *See In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003).

Texarkana Sept. 25, 2015, pet. denied) (mem. op.)); *see Lee v. Holoubek*, No. 06-15-00041-CV, 2016 WL 2609294, at *5 (Tex. App.—Texarkana May 6, 2016, no pet.) (mem. op.). Because Mother's motion at trial does not comport with the point of error she brings on appeal, Mother did not preserve her complaint that the trial court erred in failing to extend the dismissal deadline.[6]

## III. Sufficient Evidence Supports the Trial Court's Best-Interest Determination

### A. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Indeed, parents have a fundamental right to make decisions concerning "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). This Court is therefore required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 500. "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that

---

[6]To the extent Mother's brief could be interpreted as raising the issue of trial court error in failing to grant her motion for continuance, we find no such error. "A motion for continuance shall not be granted except for sufficient cause supported by an affidavit, consent of the parties, or by operation of law." *In re J.D.*, No. 06-18-00105-CV, 2019 WL 1302932, at *7 (Tex. App.—Texarkana Mar. 22, 2019, no pet.) (mem. op.) (citing TEX. R. CIV. P. 251). "If a party's motion for continuance is not . . . verified, then we will presume the trial court did not abuse its discretion." *Id.* Because Mother's motion for continuance was not verified, the oral motion failed to comply with Rule 251.

5

termination is in the child's best interest."[7] *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing TEX. FAM. CODE ANN. § 161.001 (Supp.); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "This standard of proof necessarily affects our review of the evidence." *L.E.S.*, 471 S.W.3d at 920.

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *Id.* (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.*

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). We must determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is

---

[7]Mother does not challenge the grounds of termination.

6

so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "[I]n making this determination, we must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *A.B.*, 437 S.W.3d at 530 (quoting *C.H.*, 89 S.W.3d at 26); *see L.E.S.*, 471 S.W.3d at 920.

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26)).

## B.     Analysis of the *Holley* Factors

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

In determining the best interests of the child, courts consider the following *Holley* factors:

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals,

7

> (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see E.N.C.*, 384 S.W.3d at 807; *see also* TEX. FAM. CODE ANN. § 263.307(b). "It is unnecessary to prove all of these factors as a condition precedent to parental-rights termination." *C.A.J.*, 459 S.W.3d at 183 (citing *C.H.*, 89 S.W.3d at 27). "[E]vidence offered to prove grounds for termination, contact between the natural parent and child, and degree of financial support are relevant to determining if termination is in the best interest of the child." *Id.* (citing *C.H.*, 89 S.W.3d at 28).

The testimony at trial indicated that J.M. did not wish to return to live with Mother. She did not believe Mother would change and feared retaliation by Mother. L.M.'s desires about remaining with Mother are unknown. Therefore, the first *Holley* factor weighs in favor of termination of Mother's parental rights to J.M. and is neutral with respect to termination of her rights as to L.M.

The second, third, eighth, and ninth *Holley* factors weigh in favor of termination of Mother's parental rights as to both children. Mother assaulted J.M. with a knife, chased her into the bathroom, and threatened to kill both J.M. and herself. As a result, she was convicted of family-violence assault. Joey Elliott, the advocate coordinator for Court Appointed Special Advocates (CASA) in Bowie County, testified that he was familiar with Mother and both children through his CASA duties and that Mother has a great deal of animosity for J.M. Elliott testified that there was a lot of pressure on J.M. and that he had spoken with J.M.'s counselor about that pressure. According to Elliott, Mother's threat of a murder-suicide had a serious emotional impact on J.M.,

and J.M. felt responsible for the Department's involvement. Elliott also testified that Mother had blamed J.M. for everything that happened. Elliott believed that termination of Mother's parental rights was in J.M.'s and L.M.'s best interests.

Before Mother's assault against J.M., J.M. had been hospitalized at a behavioral health unit on eight occasions. On her most recent hospital discharge, J.M. had been given several prescriptions, none of which had been filled. J.M. had no type of aftercare treatment, and there were concerns that her mental health needs were not being met. The Department caseworker described J.M.'s relationship with Mother as unhealthy.

The record further indicates that Mother has completely neglected L.M. and put J.M. in charge of L.M.'s care. L.M.'s lack of potty training and her inability to dress herself, identify primary colors, count to ten, or recite the alphabet were not associated with any type of disability. Instead, they were due to Mother's neglect of L.M. Beyond her abject neglect of L.M., Mother's assault of J.M. happened with four-year-old L.M. in the same room. L.M. was repeatedly exposed to Mother's volatile and violent behavior.

Mother had also been incarcerated following her conviction of three counts of delivery of a controlled substance and two counts of use of a communication device during a drug deal in Miller County. Mother failed to complete all required services because she was arrested and jailed during the pendency of the proceedings. *See In re B.A.*, No. 04-13-00246-CV, 2013 WL 4679089, at \*1 (Tex. App.—San Antonio Aug. 28, 2013, no pet.) (mem. op.) (failure to complete classes and counseling "directly related to underlying reasons for the children's removal . . . is evidence that the children would continue to be in danger if they were returned to her"). Finally, Mother

related to Elliott that she would not take the medication needed for her bipolar disorder, as required by the service plan. The Department investigator confirmed that, based on her investigation, the children's physical and emotional well-being was endangered by Mother's actions and by their home environment. Mother did not offer any excuses for her acts and omissions.

The fourth and fifth *Holley* factors likewise weigh in favor of termination of Mother's parental rights to both children. Mother's total lack of parental abilities is aptly demonstrated by the evidence previously recited. "Evidence of past misconduct or neglect can be used to measure a parent's future conduct." *In re Z.M.*, 456 S.W.3d 677, 689 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re I.R.K.-N.*, No. 10-13-00455-CV, 2014 WL 2069281, at *7 (Tex. App.—Waco May 15, 2004, pet. denied) (mem. op.) (citing *Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."))). Although Mother completed some of the programs and counseling required of her, she did not complete all of the requirements due to her incarceration. There was no evidence of what programs might be available to Mother while she was incarcerated in Arkansas.

Mother, who expressed no plans for the children other than placement with her sister—who has not been approved as a placement by the Department—cannot provide the children with a home due to her incarceration. The children have a strong bond together and with the foster placement. They are safe and secure, with the potential for adoption by the foster family. The sixth *Holley* factor supports termination of Mother's parental rights as to both children.

The evidence recited above reveals that Mother's home was the definition of instability. It

10

was riddled with violence and neglect, thereby supporting termination as to both children under the seventh *Holley* factor. In contrast, the children lived together at the time of trial in a stable and loving foster home where J.M. participated in age-appropriate activities, such as dance, without the responsibility of taking care of L.M. She was unable to do those things while living with Mother. J.M. has not been hospitalized for behavioral health problems since her placement in foster care and has been in counseling and is learning to stand up for herself and to face certain obstacles. Since she has been in foster care, L.M. has received needed services and therapy and receives the attention she needs. The Department caseworker testified that she believes termination of Mother's parental rights is in the children's best interests.

Considering these factors, and considering all the evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Mother's parental rights was in the best interests of J.M. and L.M. We, therefore, conclude that the evidence was legally and factually sufficient to support the court's best-interest finding.

## IV. Mother Lacks Standing to Challenge the Trial Court's Conservatorship Determination

Mother, at one point in the process, indicated that she wanted her sister who resides in Missouri to care for the children.[8] Mother then changed her mind and indicated that she wanted her sister who resides in Hawaii to care for the children. Although the Department caseworker had been in contact with the Hawaii sister, she still had not received everything she needed for a background check. At the termination hearing, Mother's Missouri sister testified that she would

---

[8]The Missouri sister refused to provide the Department with information required to perform a background check.

11

take L.M. On appeal, Mother contends that the evidence was insufficient to support the continued placement of the children with a non-relative, non-designated caregiver.

The Department argues that this issue should not be addressed on the merits because to do so would permit Mother to complain of errors that do not injure her or which merely affect others. "The principle that '[a]n appealing party "may not complain of errors [that] do not injuriously affect [her] or which merely affect the rights of others"' is well established in Texas." *In re E.N.J.*, No. 06-15-00019-CV, 2015 WL 5917726, at * 2 (Tex. App.—Texarkana Aug. 13, 2015, no pet.) (mem. op.) (quoting *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex. 1982) (quoting *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex. 1973))); *see Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex. 1999) (per curiam).

"Once we overrule a parent's challenge to a termination order, the trial court's appointment of the Department as sole managing conservator may be considered a 'consequence of the termination pursuant to Family Code section 161.207.'" *In re D.K.W., Jr.*, No. 01-17-00622-CV, 2017 WL 6520439, at *5 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied) (mem. op.) (quoting *In re A.S.*, 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)). Because we have decided against Mother regarding her challenge to the trial court's best-interest finding, the trial court's termination order has divested Mother of her legal rights and duties respecting the children. *See* TEX. FAM. CODE ANN. § 161.206(b) (Supp.); *D.K.W.*, 2017 WL 6520439, at *5; *In re A.JA.T., An.J.T., and A.Jo.T.*, *Children*, No. 05-18-00705-CV, 2018 WL 5993905, at *4 (Tex. App.—Dallas Nov. 15, 2018, no pet.) (mem. op.).

Consequently, Mother lacks standing to challenge the trial court's appointment of the Department as the children's managing conservator because that determination could not injuriously affect her rights. *See A.JA.T.*, 2018 WL 5993905, at *4; *E.A. v. Tex. Dep't of Family & Protective Servs.*, No. 03-15-00811-CV, 2016 WL 1639847, at *4 (Tex. App.—Austin Apr. 21, 2016, pet. denied) (mem. op.) (affirming termination of mother's parental rights and holding that mother, who had been divested of her legal rights to child, could not challenge conservatorship determination).

## V.     Conclusion

We affirm the trial court's order.


                                        Scott E. Stevens
                                        Justice


Date Submitted:      April 7, 2020
Date Decided:        April 9, 2020

13