**Reversed and Rendered in Part and Affirmed; Opinion Filed August 13, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-00271-CV**

**W. ERIC BRAUSS; CHRISTINE MARTIN; TEXAS HORSESHOE; DROEGE INVESTMENT GBR; WOLF HEIMERDINGER; SANDY MARKS; T.H. SONG-WINKLER; MICHELE ROELCKE; AND SUSAN BRAUSS, Appellants**
**V.**
**TRIPLE M HOLDING GMBH; 2 M GMBH; FRN PRODUCT MARKETING GMBH; ASN IMMOBILIEN GMBH; RENATE NIXDORF GMBH & CO. KG; MICHAEL NIXDORF VERWALTUNGS GMBH; SDI, INC.; SDI GRAND CAYMAN, L.L.C.; SGC MANAGEMENT, L.L.C.; SDI PARADISE ISLAND, L.L.C.; SPI MANAGEMENT, L.L.C.; NDF/TRA GRAND CAYMAN, L.P.; WATERCREST PARTNERS, L.P.; AND RMB INVESTMENTS, INC., Appellees**

On Appeal from the 116th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-09-16465

## OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Moseley

This case results from the downfall of a real estate empire built by W. Eric Brauss through a complex web of real estate limited partnerships involving hundreds of investors and creditors. When some of the investors began to realize the empire was crumbling, Brauss fired all the employees at his management company, Today Realty Advisors, Inc. (TRA), and left the country. Several lawsuits were filed by various parties against the management company,

Brauss, and his former wife, Christine Martin. Brauss and Martin asserted their Fifth Amendment right against self-incrimination in response to discovery requests in one of the other lawsuits. Martin later withdrew her assertion of the privilege.

The structure of the real estate projects followed a similar pattern, consisting of multiple layers of limited partnerships with corporate general partners. The real property would be owned by limited partnership with a corporate general partner. The limited partners themselves were also limited partnerships with a corporate general partner. This structure was then repeated with the limited partner being owned by another limited partnership. Some of the projects involved four or more levels of these limited partnerships. In general, Brauss and TRA owned and controlled the general partners of each level of the limited partnerships involved in this lawsuit.

Brauss and Martin were not originally named as defendants in this lawsuit. Instead, a group of eight investors claiming to be limited partners, on behalf of themselves, certain limited partnerships, and "all other limited partners similarly situated," filed this lawsuit against TRA and several of the general partners controlling some of the real estate investment properties.[1] The plaintiffs[2] alleged claims for breach of contract, breach of fiduciary duty, alter ego and veil piercing. They sought injunctive relief, damages, the appointment of a receiver, and declaratory relief. The trial court granted a temporary restraining order and appointed a receiver for several of the partnerships.

The plaintiffs later reached a settlement agreement with Brauss and Martin. In general, the settlement provided that Brauss and Martin would agree to a judgment against themselves and their interests in all the partnerships and corporations in exchange for an agreement not to

[1] Although the petition purports to be filed on behalf of several limited partnerships and on behalf of all other limited partners similarly situated, the plaintiffs did not seek and the trial court did not certify a class action proceeding. The plaintiffs are described as limited partners, but the pleadings do not identify which partnership they were partners in.

[2] Only four of the original plaintiffs appeal and will be referred to as the Horseshoe Appellants.

execute the judgment against them personally and an affidavit of non-prosecution. Brauss and Martin indicated that all of their non-exempt North American assets would be subject to the judgment. The receiver would administer the assets and pay the individual investors according to a formula set out in the settlement agreement. After the settlement was reached, Brauss and Martin, individually and on behalf of several partnerships and corporations in which Brauss had an ownership interest, filed a petition in intervention in the lawsuit for purposes of effectuating the settlement agreement.

The plaintiffs obtained approval from the trial court to send notice of the right to opt-in to the settlement agreement to all investors in the various partnerships. Afterwards, a large group of investors were granted leave to intervene as plaintiffs to join in the settlement.[3] However, two other groups (referred to as the Nixdorf Appellants and the Song-Winkler Appellants) objected to the settlement and intervened as plaintiffs to assert claims for debt and return of capital against the defendants and defendant-intervenors. On the receiver's motion, the trial court later struck the Song-Winkler Appellants' intervention.

The claims of the Nixdorf Appellants against the defendants were tried to the court in a bench trial. The damages for the plaintiffs were also tried to the court. The trial court rendered a final judgment approving the settlement; awarding damages in excess of $65 million to the plaintiffs against Brauss, Martin, TRA, and other entities; awarding damages in excess of $48 million to the Nixdorf Appellants against Brauss, Martin, TRA, and another entity; appointing a permanent receiver; and declaring the ownership of certain general partnership interests and the division of proceeds from a project known as Sugar Land. The trial court was not requested to

---

[3] Actually, over 200 investors were granted leave to intervene for purposes of the settlement by the trial court's agreed interlocutory judgment. The record does not indicate that a pleading in intervention was actually filed on behalf of these investors. However, counsel for the Horseshoe Appellants represented to the trial court that those investors electing to participate in the settlement were listed on Exhibit A to the final judgment and they were named in the caption of the final judgment.

and did not file written findings of fact and conclusions of law.

Only a few of the parties to the trial court's judgment have appealed to this Court. They can be broken down into the following groups:

(1)     appellants W. Eric Brauss and Christine Martin,[4] intervening defendants in the trial court;

(2)     appellants Texas Horseshoe, Inc., Droege Investment Gbr, Wolf Heimerdinger, and Sandy Marks (the Horseshoe Appellants), four of the original plaintiffs in the trial court;

(3)     appellants T.H. Song-Winkler, Michele Roelcke, and Susan Brauss (the Song-Winkler Appellants), intervening plaintiffs who were stricken from the suit;

(4)     appellees and cross-appellants Triple M Holding GmbH, 2 M GmbH, FRN Product Marketing GmbH, ASN Immobilien GmbH, Renate Nixdorf GmbH & Co. KG,[5] Michael Nixdorf Verwaltungs GmbH, SDI, Inc., SDI Grand Cayman, L.L.C., SGC Management, L.L.C., SDI Paradise Island, L.L.C., SPI Management, L.L.C., and NDF/TRA Grand Cayman, L.P. (collectively the Nixdorf Appellants), intervening plaintiffs in the trial court;

(5)     appellee Watercrest Partners, L.P. (Watercrest), intervening plaintiff in the trial court;  and

(6)     appellee RMB Investments, Inc. (RMB), the receiver appointed in the final judgment.

With the exception of Watercrest and RMB, each of these groups has filed issues on appeal. Those issues necessary for resolution of this appeal will be discussed below. *See* TEX. R. APP. P. 47.1.

STANDARD OF REVIEW

On appeal from a nonjury trial without findings of fact and conclusions of law, it will be implied that the trial court made all findings necessary to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83–84 (Tex. 1992). Without findings of fact and

---

[4]Christine Martin is Brauss's former wife and is referred to in the final judgment as Christine Brauss. We will refer to her as Martin for the purpose of clarity.

[5]Appellant Renate Nixdorf GmbH & Co. KG will be referred to as Renate Nixdorf where necessary.

conclusions of law, the trial court's judgment will be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam).

When a reporter's record is brought forward, these implied findings may be challenged on appeal by legal or factual sufficiency issues. *Holt Atherton*, 835 S.W.2d at 83. In a nonjury trial, a complaint about the legal or factual sufficiency of the evidence may be made for the first time on appeal. TEX. R. APP. P. 33.1(d); *Office of Atty. Gen. of Tex. v. Burton*, 369 S.W.3d 173, 175 (Tex. 2012) (per curiam).[6]

In evaluating the legal sufficiency of the evidence to support a finding, we credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing the factual sufficiency of evidence, we review all the evidence and will set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.

---

[6] The Nixdorf Appellants assert that Brauss and Martin failed to preserve error on their sufficiency of the evidence issues because their motion for new trial did not comply with TEX. R. CIV. P. 321 and 322. However, in a nonjury trial, challenges to the sufficiency of the evidence need not be raised in a motion for new trial. *Burton*, 369 S.W.3d at 175; *see also* TEX. R. APP. P. 33.1(d); TEX. R. CIV. P. 324(a), (b).

The Nixdorf Appellants also assert that the Horseshoe Appellants failed to preserve error on their sufficiency of the evidence issue. They assert that complaints about the trial court's damage award must be presented to the trial court in the form of a motion to modify the judgment or a motion for new trial, citing *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 816 (Tex. App.—Dallas 1999, no pet.) and *Ex-Change Auto Sales v. KUT Auto Sales*, 05-02-00307-CV, 2002 WL 31418038, at *1 (Tex. App.—Dallas Oct. 29, 2002, no pet.) (not designated for publication).

In *Arthur's Garage*, we stated the general rule for preservation of error and concluded the appellant had properly raised a complaint about the award of attorney expenses as part of the award of attorney's fees. 997 S.W.2d at 816. Accordingly, the issue was properly raised on appeal and we did not need to discuss the exception for preservation of sufficiency of the evidence challenges in nonjury trials. In *Ex-Change Auto Sales*, the appellant did not challenge the sufficiency of the evidence, but argued on appeal for a statutory limit on the amount of damages that had never been raised before the trial court. 2002 WL 31418038, at *1. Neither decision supports the argument that sufficiency of the evidence challenges in a nonjury trial must be preserved in the trial court. *See Burton*, 369 S.W.3d at 175.

1986) (per curiam). In a bench trial, the trial court is the sole judge of the credibility of the witnesses and may believe one witness over another and resolve any conflicts or inconsistencies in the testimony. *Shaw v. County of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied); *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 917–18 (Tex. App.—Dallas 2008, no pet.).

## A. Sufficiency of the Evidence

### 1. The Nixdorf Appellants' Judgment Against Brauss and Martin

In their second issue, Brauss and Martin challenge the sufficiency of the evidence to support the judgment against them in favor of the Nixdorf Appellants.

The Nixdorf Appellants asserted claims for breach of contract, fraud, fraudulent inducement, and breach of fiduciary duty. The judgment awards the Nixdorf Appellants damages against Brauss and Martin, jointly and severally, relating to four projects known as Grand Cayman, Paradise Island, Riverwalk, and Pelican Point. The damages represent the equity invested by the Nixdorf Appellants in each of these projects and the principal balance of several loans made by some of the Nixdorf Appellants on the projects.

#### a. Damages

Brauss and Martin argue there is no evidence to support the damage award in favor of the Nixdorf Appellants because they relied on a single page summary as evidence. However, the underlying documents supporting the amounts shown in the summary were also admitted in evidence. Those documents included the partnership agreements showing the Nixdorf Appellants' initial investments; a Renate Nixdorf letter to Brauss attaching a project summary showing total capital contributions on each project including additional capital calls;[7] several

---

[7] The total of the equity shown on the Nixdorf Appellants' summary, plaintiff-intervenor exhibit 114, for the four projects is the same as the total of the capital contribution for those projects shown on the attachment to the Renate Nixdorf letter, plaintiff-intervenor exhibit 43.

promissory notes;[8] and guaranties signed by Brauss.  The testimony of the Nixdorf Appellants' representative, Gary Hunter, also supports the numbers shown in the exhibit.  Hunter testified that all of the capital amounts for the four projects had been funded by the Nixdorf Appellants and none had been repaid.  He testified that the principal amount of all of the loans to the projects also had been funded by the Nixdorf Appellants and none had been repaid.[9]

### b. Fraud

Brauss next argues there was no evidence his conduct caused the Nixdorf Appellants' damages or that he made any misrepresentation on which he intended the Nixdorf Appellants to act.  We discuss these arguments in the context of the Nixdorf Appellants' fraud claim.

To prevail on a claim of fraud, the Nixdorf Appellants must show: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the defendants knew it was false or made it recklessly without any knowledge of the truth; (4) the defendant made the representation intending that the plaintiff act on it; (5) the plaintiff actually relied on it; and (6) the plaintiff incurred damages.  *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 270 (Tex. App.—Dallas 2011, pet. denied) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)); *see also Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (silence is equivalent to false representation where there is duty to disclose and party deliberately remains silent).  Fraudulent inducement is a species of fraud that arises in the context of a contract; the elements of fraud must be established as they relate to a contract between the parties.  *Haase v. Glazner*,

---

[8] The total of the principal amounts of the promissory notes relating to the Grand Cayman and Riverwalk projects (plaintiff-intervenor exhibits 79, 80, 82, 86, 88, 89, and 90) is the same as the total amount of loans on those projects shown on plaintiff-intervenor exhibit 114.

[9] Because the underlying documents and Hunter's testimony support the information in the summary, we conclude the trial court did not abuse its discretion by admitting the summary.  Assuming the issue was preserved and the Horseshoe Appellants were adversely affected by the ruling, we overrule the Horseshoe Appellants' third issue, which asserts error in admitting the exhibit.

62 S.W.3d 795, 798–99 (Tex. 2001).

There is evidence Brauss owned and controlled TRA, and made all decisions on its behalf for the various partnerships in which TRA was a general or a limited partner.[10] As Hunter put it, "TRA is Eric Brauss." Hunter testified Brauss failed to disclose that he (Brauss) was not investing his or TRA's money in the partnerships. Hunter said the Nixdorf Appellants did not know at the time of their investments that there would be investors other than Brauss or TRA-owned entities.

Hunter explained that while TRA was in control of the Paradise Island project, a $2 million judgment was taken against the Paradise Island property. On the Pelican Point project, Hunter testified that TRA and Brauss failed to disclose to the Nixdorf Appellants that the U. S. Army Corps of Engineers had determined that a water channel necessary for development could not be improved. When the Nixdorf Appellants confronted Brauss with these facts in 2007, Brauss admitted the deception and agreed to make them whole from money he was going to make from other projects. On the Grand Cayman project, at the time the Nixdorf Appellants invested, Brauss and TRA failed to disclose to them that there were already two to three years' worth of condominiums on the market to be sold and that a lawsuit had been filed to prevent further condos being built on the beach. (The lawsuit was later overturned, but by then there was no market for additional condos.)

Hunter also testified about accounting irregularities in the books of the four projects. After their investments, the Nixdorf Appellants discovered several different types of fees on the records—that had never been disclosed to them. Some of those fees went to Brauss. Hunter also

---

[10] It is well established that "a corporate agent is personally liable for his own fraudulent or tortious acts." *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002) (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984); Restatement (Second) of Agency § 348 (1958)). Liability is based on the agent's own actions, not his status as an agent. *Miller*, 90 S.W.3d at 717 (quoting *Light v. Wilson*, 663 S.W.2d 813, 815 (Tex. 1983) (Spears, J., concurring)). Thus, a corporate agent is personally liable for his own tortious conduct even without piercing the corporate veil. *See Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex. App.—Dallas 2007, no pet.).

testified the balance sheets did not make sense; for example, the funds shown in a construction cost account were later found to never have existed. There is also evidence in the record that the real property for each of the four projects had or was about to be foreclosed upon by the lenders on the projects.

Hunter testified his summary showed the principal amount of loans made by members of the Nixdorf Appellants at the request of Brauss or TRA for the Grand Cayman and Riverwalk projects. The record indicates Brauss personally guaranteed several of the promissory notes. Hunter testified all the loans were funded by the Nixdorf Appellants and nothing had been repaid.

In addition to the evidence in the record, the Nixdorf Appellants rely on the negative inferences arising from Brauss's invocation of his right against self-incrimination. Through counsel, Brauss refused to appear for deposition and invoked his constitutional right against compelled self-incrimination. The Nixdorf Appellants argue the negative inferences arising from this support the trial court's judgment.

In a civil case, a fact finder may draw negative inferences from a party's assertion of the privilege against self-incrimination. *See* TEX. R. EVID. 513(c); *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007) (per curiam); *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995). In *Baxter v. Palmigiano*, the United States Supreme Court stated: "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter*, 425 U.S. 308, 318 (1976). However, without some probative evidence of the elements of a party's claim, any negative inference that might be drawn from the invocation of the "privilege against self-incrimination cannot rise beyond mere suspicion." *Webb v. Maldonado*, 331 S.W.3d 879, 883 (Tex. App.—Dallas 2011, pet. denied).

There is evidence from which a reasonable fact finder could infer that Brauss misrepresented and withheld material information about the projects in order to induce the Nixdorf Appellants to make their original investment; to continue investing in response to capital calls; to loan additional money to the partnerships and TRA; and to forbear collection on those loans. There is evidence Brauss admitted making misrepresentations and intended to induce action by the Nixdorf Appellants. The Nixdorf Appellants relied on these representations to their ultimate detriment when the projects were foreclosed. This constitutes probative evidence of the elements of the Nixdorf Appellants' claim. *See id.* Thus, the trial court was also free to draw negative inferences from Brauss's invocation of the privilege against self-incrimination.

Considering the evidence in the light most favorable to the trial court's judgment, we conclude there is more than a scintilla of evidence to support the trial court's implied finding of fraud against Brauss. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex. 2002) (plurality op.). Looking at all the evidence, it is not so weak that the trial court's implied findings are clearly wrong or unjust. *See Cain*, 709 S.W.2d at 176. Accordingly, we overrule Brauss's second issue. Because we conclude the evidence is sufficient on the fraud and fraudulent inducement claims to support all of the complained-of damages awarded to the Nixdorf Appellants against Brauss, we do not discuss the other causes of action against him.[11]

### c. Claims Against Martin

Martin contends the Nixdorf Appellants presented no evidence against her at trial. The record shows Martin was neither a party to nor a guarantor of any of the promissory notes on the Nixdorf Appellants' projects. The Nixdorf Appellants identify no other contract with Martin that would support the judgment. (We discuss the judgment for Watercrest against Martin below.)

---

[11] Brauss does not complain about or challenge the award of attorney's fees to the Nixdorf Appellants. However, there is evidence he breached his personal guaranties of several of the loans, which is some evidence to support the award of attorney's fees under the theory of breach of contract.

The evidence shows that Brauss controlled the businesses and dealt directly with the investors. There is no evidence Martin had any direct dealings with or made any representations to the Nixdorf Appellants. There is no evidence Martin was an agent of TRA or any of the entities dealing with the Nixdorf Appellants' projects. Although there is evidence Martin was the owner of other entities, CDB Holdings, L.P. and Buckingham Financial, LLC, neither entity was connected to the four projects on which the Nixdorf Appellants recovered damages. Nor is there any evidence Martin was a partner in any of the partnerships relating to those projects. The Nixdorf Appellants argue Martin breached her fiduciary duties by not discovering or acting to prevent Brauss's fraud, but there is no evidence she owed any fiduciary duty to any of the Nixdorf Appellants.

The Nixdorf Appellants contend that by entering into an agreed judgment in this case imposing liability on several real estate partnerships, Brauss and Martin breached their fiduciary duties. The Nixdorf Appellants refer to an agreed final judgment, signed by Brauss, Martin, and their attorney, that the Horseshoe Appellants tendered to the trial court at the beginning of trial. This proposed judgment does not appear in the record on appeal. Therefore, we cannot determine what that document provided. Nevertheless, the actual judgment rendered by the trial court does not impose liability against any of the partnerships the Nixdorf Appellants invested in. The final judgment renders judgment for the plaintiffs and plaintiff-intervenors for settlement purposes against each of the entities on exhibit B to the judgment for the respective amounts shown on exhibit A for the respective plaintiff or plaintiff-intervenor. None of the partnerships the Nixdorf Appellants invested in are listed on exhibit B to the final judgment.[12]

We conclude there is no evidence to support the Nixdorf Appellants' causes of action as

---

[12] Renate Nixdorf was a limited partner in the following partnerships: NDF/TRA Grand Cayman, L.P., NDF/TRA Paradise Island, L.P., NDF/TRA Riverwalk, L.P., NDF/TRA Pelican, L.P., NDF/TRA Arts District, L.P., and NDF/TRA Sugar Land, L.P. None of these partnerships is listed on exhibit B to the final judgment.

–11–

to Martin. We sustain her second issue. Because we conclude there is no evidence to support Martin's liability on any of the Nixdorf Appellants' causes of action, we do not address her first issue.[13]

### 2. Sufficiency Issues of The Horseshoe Appellants and The Nixdorf Appellants

Both the Nixdorf Appellants and the Horseshoe Appellants obtained money judgments against some of the same defendants. The Horseshoe Appellants challenge the sufficiency of the evidence supporting the Nixdorf Appellants' damage award. Likewise, The Nixdorf Appellants challenge the sufficiency of the evidence to support the damage award to the Horseshoe Appellants.

The Horseshoe Appellants claim the Nixdorf Appellants lack standing to appeal the damage award favoring the Horseshoe Appellants because they—the Nixdorf Appellants—are not adversely affected by that portion of the judgment. We agree. We also agree that the Horseshoe Appellants do not have standing to complain of the award of damages in favor of the Nixdorf Appellants.

The record does not show that the money judgment in favor of one of these two groups adversely affects any of the interests of the other. Texas courts have long held that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000); *Tex. Workers' Compensation Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex. 1999) (per curiam); *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex. 1982); *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex. 1973); *Shell Petroleum Corp. v. Grays*, 131 Tex. 515, 114 S.W.2d 869, 870 (1938); *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 893 (Tex.

---

[13] Martin's first issue argued that the Nixdorf Appellants did not file a pleading asserting a cause of action against her.

App.—Dallas 2004, pet. denied).

We recognize a party seeking to obtain a judgment against a defendant may desire to reduce the number or amount of other claims against the same defendant. But that alone does not give one party a justiciable interest concerning the claims of another party against the common defendant. *See Jackson*, 499 S.W.2d at 92 (appealing defendant could not complain of alleged error in judgment against non-appealing co-defendants).

We conclude the Nixdorf Appellants are not injuriously affected by the judgment in favor of the Horseshoe Appellants and have no standing to appeal that portion of the judgment. For the same reasons, the Horseshoe Appellants do not have standing to complain of the judgment awarding damages to the Nixdorf Appellants against the defendants. We overrule the Nixdorf Appellants' second issue and the Horseshoe Appellants' third and fourth issues.

### B. Summary Judgment on Martin's Guaranty

Martin appeals the trial court's summary judgment against her in favor of Watercrest Partners, L.P. on her personal guaranty. Watercrest moved for summary judgment to collect on a $300,000 promissory note and the personal guaranties of Brauss and Martin. Martin did not file a response to the motion for summary judgment and did not raise any affirmative defenses. The trial court granted the summary judgment motion and incorporated that judgment into the final judgment.

On appeal, Martin argues the summary judgment was erroneous because the maturity date of the promissory note was extended without her consent as guarantor. However, material alteration of the underlying debt that discharges a guarantor is an affirmative defense. *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 588 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Fed. Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 944 (Tex. App.—Houston [1st Dist.] 1988, no writ); *see also Futerfas Family Partners v. Griffin*, 374 S.W.3d 473, 478–79 (Tex. App.—Dallas

2012, no pet.) ("To be entitled to discharge from liability on the guaranty, the guarantor must prove (1) a material alteration of the underlying contract; (2) made without the guarantor's consent; (3) which is to the guarantor's detriment.").

Martin never raised this affirmative defense in an answer to Watercrest's claim or in a response to the motion for summary judgment. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c); *see also Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (party opposing summary judgment based on an affirmative defense must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment); *Hewitt v. Biscaro*, 353 S.W.3d 304, 308 (Tex. App.— Dallas 2011, no pet.).

Because Martin did not raise the issue of her affirmative defense in a written response to the motion for summary judgment, we will not consider it as a ground for reversal. We overrule Martin's third issue.

## C. Partnership Assignments; Arts District Partnerships

The Horseshoe Appellants' first and second issues complain of the trial court's declaration that SDI Arts District, L.L.C. is the general partner of NDF/TRA Arts District, L.P. and Arts District, L.P.[14] None of these entities is a party to this appeal. The Horseshoe Appellants do not explain how their interests are adversely affected by the trial court's declaratory judgment.

The Horseshoe Appellants and the plaintiff-intervenors for settlement purposes in the trial court appear to be remote limited partners of other limited partnerships that, in turn, owned

---

[14] The final judgment declared that members of the Nixdorf Appellants were general partners in nine partnerships. The partnership interests were assigned by Brauss and TRA to members of the Nixdorf Appellants pursuant to a July 15, 2009 forbearance agreement. At oral argument, the Nixdorf Appellants and the Horseshoe Appellants conceded that only the two Arts District partnerships were at issue.

limited partnership interests in the assigned partnerships. Indeed, the various partnership agreements in the record show that none of the Horseshoe Appellants is named as a limited partner in any of the partnership agreements at issue.[15] For example, the limited partnership agreement for Today Arts District, L.P. shows that TRA is the general partner, the Class A limited partner, and the Class B limited partner. No other partners are shown in that agreement.[16]

Thus, we conclude the Horseshoe Appellants lack standing to complain of this portion of the trial court's judgment. *See Mandlbauer*, 988 S.W.2d at 752 (appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others). We overrule the Horseshoe Appellants' first and second issues.

## D. Sugar Land Partnerships

The Nixdorf Appellants' first issue concerns the trial court's declaration regarding the distribution of the proceeds from the sale of the property involved in the Sugar Land project. As a result of the sale of that property, a distribution was due to the partners of NDF/TRA Sugar Land, L.P. The limited partners in NDF/TRA Sugar Land, L.P. are Renate Nixdorf and Today Sugar Land Investment, L.P. The trial court declared that Renate Nixdorf was entitled to a 50 percent share of the distribution and that Today Sugar Land Investment, L.P. was entitled to a 49 percent share of the distribution. This allocation is consistent with the terms of the NDF/TRA

---

[15] Texas Horseshoe, Inc. is shown on exhibit A to the final judgment as holding a debt claim and as an investor in six limited partnerships, including Today Sugar Land Investment, L.P. However, Texas Horseshoe, Inc. is not named as a limited partner in the limited partnership agreement for Today Sugar Land Investment, L.P. The partnership agreement merely lists "Other Limited Partners" on the schedule showing the initial capital contributions of the partners.

Wolf Heimerdinger is listed on exhibit A to the final judgment as to a partnership not involved in any dispute on appeal. Droege Investment Gbr is not listed on any of the exhibits to the final judgment. Sandy Marks is not mentioned by name in exhibits to judgment. However, a Sandy Haymann is listed several times and appears to be only "Sandy" in the list. Haymann is shown as an investor in Today Arts District, L.P., but the Today Arts District, L.P. partnership agreement does not list this person as a limited partner.

[16] Exhibit A to the final judgment allocates certain sums to identified investors, including Sandy Haymann, as to Today Arts District, L.P., but there is no evidence in the record showing those investors were actually limited partners in Today Arts District, L.P.

–15–

Sugar Land, L.P. limited partnership agreement.

The Nixdorf Appellants argue the distribution of the sale proceeds must be modified because accounting records show that part of Today Sugar Land Investment, L.P.'s capital contribution was booked by the general partner in the form of an account payable of over $800,000. They contend that because the partnership agreement required the initial capital contribution of the limited partners to be in cash, Today Sugar Land Investment, L.P.'s relative Capital Contribution is only $1.1 million instead of $1.9 million.[17]

The limited partnership agreement required the two limited partners to contribute $1.9 million each for their limited partnership interests in NDF/TRA Sugar Land, L.P. The agreement also provided that distributions to the limited partners would be made pro rata, "according to their relative Capital Contributions."

The accounting records for NDF/TRA Sugar Land, L.P. and Today Sugar Land Investment, L.P. were maintained by employees of TRA at its offices. Those records show the initial capital contribution of Renate Nixdorf was wired to an account for TRA and then deposited in the account of Today Sugar Land Investment, L.P. (the other limited partner of NDF/TRA Sugar Land, L.P.) along with the funds of the investors in Today Sugar Land Investment, L.P. This was done because an account had not yet been opened for NDF/TRA Sugar Land, L.P.

The receiver testified the books and records show that Today Sugar Land Investment, L.P. made its $1.9 million capital contribution to NDF/TRA Sugar Land, L.P. through a transfer of cash, payment of expenses directly to and on behalf of the developer, and the booking of an account payable of more than $800,000 to NDF/TRA Sugar Land, L.P.

---

[17] The Nixdorf Appellants contend the proceeds should be distributed approximately 65% to them and 35% to Today Sugar Land Investment, L.P. This distribution would result in about $830,000 more to Renate Nixdorf than the distribution in the trial court's judgment.

There is evidence that the Today Sugar Land Investment, L.P. account had sufficient funds to acquire its limited partnership interests in NDF/TRA Sugar Land, L.P. However, only a portion of those funds were actually transferred to a new account established for NDF/TRA Sugar Land, L.P. Over $800,000 was shown on Today Sugar Land Investment, L.P.'s books as an account payable to NDF/TRA Sugar Land, L.P. A similar amount is shown as an asset of Today Sugar Land Investment, L.P. in escrow to another Brauss entity. The receiver testified these escrow funds were transferred to another account and he does not know where the money is today.

The NDF/TRA Sugar Land, L.P. partnership agreement states that the partners will contribute cash and, when contributed, those amounts will constitute the initial capital accounts of the partners. The agreement also provides for the making of non-cash capital contributions and that those contributions are to be valued at gross fair market value as determined by the contributing partner and the general partner. This was the manner by which the partnership operated for several years. The partnership filed tax records based on the 50 percent and 49 percent relative partnership interests and there is evidence that other distributions to partners were made on this basis.

The Nixdorf Appellants argue the account receivable had no value and was never valued at fair market value by the general partner and contributing partner according to the terms of the partnership agreement. However, the receivable was carried on the books at face value as part of Today Sugar Land Investment, L.P.'s capital contribution. The books formed the basis for tax returns and distributions made by the partnership before TRA ceased operating. This is some evidence of the value of the receivable.

Because capital contributions can include non-cash property, there is no reason under the agreement that the account receivable from Today Sugar Land Investment, L.P. could not be

–17–

considered as a capital contribution.[18] We conclude the evidence is sufficient to support the trial court's declaratory judgment regarding the Sugar Land proceeds. We overrule the Nixdorf Appellants' first issue.

## E. Brauss's Authority to Settle for Certain Partnerships

The Nixdorf Appellants' third issue claims that Brauss lacked authority to consent to judgment on behalf of those entities where the general partnership interest had been assigned to the Nixdorf Appellants. The Nixdorf Appellants cite to the caption of the final judgment in support of their argument, but not to the substantive portions of the judgment. As discussed in connection with the breach of fiduciary duty claim against Martin, the final judgment does not reflect any adverse judgment against those entities. We conclude the Nixdorf Appellants' issue presents nothing for review. We overrule the Nixdorf Appellants' third issue.

## F. Song-Winkler Intervention

In three issues, the Song-Winkler Appellants complain the trial court erred by striking their intervention, rendering judgment on an illegal settlement agreement, and denying their motion for new trial. We discuss the issues together because they all depend on the Song-Winkler Appellants' intervention in this lawsuit.

### 1. Mootness

First, we address whether the Song-Winkler Appellants' appeal of the order striking their intervention is now moot because of subsequent developments.

The Horseshoe Appellants contend that these issues are moot because the Song-Winkler Appellants subsequently pursued their claims in separate lawsuits and have now settled those claims or obtained judgments. In general, an appeal is moot when the trial court's action on the

---

[18] We further note the receiver for the general partner of NDF/TRA Sugar Land, L.P., testified that when the distribution is made to Today Sugar Land Investment, L.P. he will also collect the account receivable on behalf of NDF/TRA Sugar Land, L.P. before making any further distribution of assets of that entity.

merits cannot affect the rights of the parties. *See Trulock v. City of Ducanville*, 277 S.W.3d 920, 924 (Tex. App.—Dallas 2009, no pet.). A case on appeal is moot if: (1) there is no live controversy between the parties; and (2) any decision rendered by the appellate court would be an advisory opinion. *Id.*

In their live plea in intervention, the Song-Winkler Appellants sought a judgment for the amounts due on promissory notes made by CDB Holdings, L.P., CDBGP-1, LLC, Today Texas Fund 2, L.P., and Today Six Flags GP, Inc. and a declaratory judgment regarding security agreements securing those notes. They requested a judgment holding Brauss, Martin, TRA, and other Brauss entities jointly and severally liable for those claims under theories of fraud, conspiracy, alter ego and piercing the corporate veil. They also alleged claims for fraudulent transfers and securities fraud. And they argued the trial court had to determine the percentage of responsibility of certain partnerships under chapter 33 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (West 2008).

In response to the Horseshoe Appellants' supplemental brief as to mootness, the Song-Winkler Appellants filed a brief attaching a sworn copy of an agreed final judgment in their separate lawsuit against CDB Holdings, L.P. and CDBGP-1, LLC. Pursuant to that agreed judgment, the Song-Winkler Appellants were awarded judgment on the promissory notes on which they sought judgment in their plea in intervention in this suit. As part of that agreed final judgment, the Song-Winkler Appellants agreed never to pursue any claim or judgment against Martin arising out of her ownership CDB Holdings, L.P. or CDBGP-1, LLC.[19]

The Song-Winkler Appellants also attached sworn copies of a settlement agreement and an agreed order of dismissal with prejudice in another lawsuit filed by the Song-Winkler

---

[19] The Song-Winkler Appellants did reserve the right to pursue an in rem action against Martin to recover any property transferred in violation of the fraudulent transfer statues.

Appellants against Today Six Flags GP, Inc., and others. The settlement agreement recites that the Song-Winkler Appellants brought claims against the defendants for securities fraud, conspiracy, fraud, statutory fraud, and claims against Today Texas Fund 2, L.P. for recovery on certain promissory notes. The settlement agreement provided for a release by the Song-Winkler Appellants of all existing claims, liabilities, and causes of action of any kind whatsoever against the defendants, including Today Six Flags, L.P., Today Texas Fund 2, L.P., and the receiver. The order of dismissal dismissed with prejudice all claims brought by the parties.

The Song-Winkler Appellants sought to intervene in this lawsuit to obtain a judgment against the makers of certain promissory notes. They have in a separate proceeding obtained that judgment against CDB Holdings, Inc. and their claim against Today Texas Fund 2, L.P. has been settled and the lawsuit dismissed with prejudice. Clearly the Song-Winkler Appellants' appeal of the order striking their intervention seeking a judgment on these promissory notes is now moot. *See Trulock*, 277 S.W.3d at 924.

### 2. Abuse of Discretion

To the extent the Song-Winkler Appellants' other claims seeking to extend liability on the notes to other parties are not moot, we cannot say the trial court abused its discretion by striking the Song-Winkler Appellants' intervention.

We review the ruling on a motion to strike a plea in intervention for an abuse of discretion. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). A trial court abuses its discretion if it acts without reference to any guiding rules and principles, or acts in an arbitrary and unreasonable fashion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Rule 60 permits any party with a justiciable interest in a pending lawsuit to intervene in the suit, subject to being stricken upon the motion of another party. *See* TEX. R. CIV. P. 60; *In re Union Carbide Corp.*, 273 S.W.3d 152, 154–55 (Tex. 2008)

–20–

(per curiam); *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657. The "justiciable interest" requirement is "of paramount importance: it defines the category of non-parties who may, without consultation with or permission from the original parties or the court, interject their interests into a pending suit to which the intervenors have not been invited." *Union Carbide*, 273 S.W.3d at 155. Once a motion to strike is filed, the intervenors have the burden to show a justiciable interest in the pending suit. *Id.*

As creditors holding notes made by CDB Holdings and Today Texas Fund 2, the Song-Winkler Appellants did not show they could have brought the same claim for fraud, alter ego, and breach of fiduciary duty as the Horseshoe Appellants. The Horseshoe Appellants did not bring any claims on the Song-Winkler Appellants promissory notes and all of the Song-Winkler Appellants' causes of action arise out of those promissory notes. The Song-Winkler Appellants have not shown they had a justiciable interest in this lawsuit. *See Union Carbide*, 273 S.W.3d at 155.

Moreover, the trial court was within its discretion to conclude that the intervention would have unnecessarily complicated the issues and that the Song-Winkler Appellants could protect their interests through other means. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 657. For example, the Song-Winkler Appellants sought to interject new and unique claims into a massively complex case. The Song-Winkler Appellants alleged a claim against Brauss and Martin for fraudulent transfer based on the settlement agreement with the Horseshoe Appellants. Obviously, this was not a claim that had been brought by the Horseshoe Appellants. The Song-Winkler Appellants also brought claims for securities fraud. No other party had asserted claims for securities fraud in this litigation.

The Song-Winkler Appellants have not shown the trial court abused its discretion by striking their intervention. Accordingly, we overrule the Song-Winkler Appellants' three issues.

## CONCLUSION

For the reasons discussed herein, we reverse that part of the trial court's judgment awarding the Nixdorf Appellants damages jointly and severally against Martin. We render judgment that the Nixdorf Appellants take nothing against Martin.

In all other respects, we affirm the trial court's judgment.

/Jim Moseley/
JIM MOSELEY
JUSTICE

110271F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

W. ERIC BRAUSS; CHRISTINE MARTIN; TEXAS HORSESHOE; DROEGE INVESTMENT GBR; WOLF HEIMERDINGER; SANDY MARKS; T.H. SONG-WINKLER; MICHELE ROELCKE; AND SUSAN BRAUSS, Appellants

No. 05-11-00271-CV     V.

TRIPLE M HOLDING GMBH; 2 M GMBH; FRN PRODUCT MARKETING GMBH; ASN IMMOBILIEN GMBH; RENATE NIXDORF GMBH & CO. KG; MICHAEL NIXDORF VERWALTUNGS GMBH; SDI, INC.; SDI GRAND CAYMAN, L.L.C.; SGC MANAGEMENT, L.L.C.; SDI PARADISE ISLAND, L.L.C.; SPI MANAGEMENT, L.L.C.; NDF/TRA GRAND CAYMAN, L.P.; WATERCREST PARTNERS, L.P.; AND RMB INVESTMENTS, INC., Appellees

On Appeal from the 116th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-09-16465.
Opinion delivered by Justice Moseley.
Justices Fillmore and Myers participating.

In accordance with this Court's opinion of this date, that portion of the trial court's final judgment awarding damages to the Nixdorf Parties against Christine Brauss (now Christine Martin), jointly and severally (page 26 of the final judgment), is **REVERSED** and judgment is **RENDERED** that the Nixdorf Parties take nothing against Christine Brauss (now Christine Martin).

In all other respects, the trial court's final judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

–23–

Judgment entered this 13th day of August, 2013.

/Jim Moseley/
JIM MOSELEY
JUSTICE