

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00897-CV

**IN THE INTEREST OF E.P.A.** and E.C.A., Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA02451
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:　Patricia O. Alvarez, Justice

Sitting:　　　Patricia O. Alvarez, Justice
　　　　　　　Beth Watkins, Justice
　　　　　　　Lori I. Valenzuela, Justice

Delivered and Filed: May 17, 2023

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's parental rights to her children E.P.A. and E.C.A.[i]

Mom challenges the legal and factual sufficiency of the evidence for the trial court's findings on the best interests of the children.

Because the evidence was legally and factually sufficient to support the trial court's findings under the elevated evidentiary standards, we affirm the trial court's order.

### BACKGROUND

In this case, Mom is the only appellant, and we limit our recitation of the facts to those relating to Mom and the children.

---

[i] We use aliases to protect the children's identities. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

In January 2020, Mom and Dad were arrested during a traffic stop when the police found methamphetamine in the car. Mom said the drugs were not hers, and she denied drug use. Because Mom and Dad were incarcerated, the children were taken into care by the Department.

Recognizing that Mom had a previous Department case for methamphetamine use, the Department created a service plan for Mom, which she signed. Her plan required her to obtain stable housing and employment or disability income to meet her children's basic needs; complete a psychological evaluation, a psychosocial assessment with individual counseling, drug and alcohol assessment and treatment, and random drug testing; and complete anger management, family violence prevention, and parenting courses.

Mom's service plan was approved by the court, and it ordered her to comply with the plan. Mom completed her psychosocial assessment and psychological evaluation, but she did not complete the anger management, family violence prevention, or parenting courses. She also did not complete her intensive outpatient drug treatment.

After a bench trial on the merits, the trial court found by clear and convincing evidence that Mom's course of conduct met the grounds in Family Code subsections 161.001(b)(1)(N), (O), and (P), and that terminating Mom's parental rights was in the children's best interests. The trial court terminated Mom's parental rights to the children, and it appointed the maternal grandparents as the children's permanent managing conservators.

Mom appeals. She challenges the legal and factual sufficiency of the evidence on the best interests of the children. Before we address Mom's sole issue, we briefly recite the applicable evidentiary and appellate review standards.

### EVIDENCE REQUIRED, STANDARDS OF REVIEW

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691

(Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The evidentiary standard[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply those standards here.

### BEST INTERESTS OF THE CHILDREN

In her only issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in her children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

### A. Unchallenged Statutory Grounds Findings

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Here, the trial court found that Mom constructively abandoned the children; she failed to comply with her court-ordered Family Service Plan; and she used a controlled substance in a manner that endangered the health or safety of the children and (1) failed to complete a court-ordered substance abuse treatment program, or (2) after completion of a court-ordered substance abuse treatment program, she continued to abuse a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P).

Mom does not challenge any of those findings, and we need not address them. *See* TEX. R. APP. P. 38.1(f), (i); *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (requiring appellate courts to

review grounds (D) and (E) "[w]hen a parent has presented the issue for appeal"). Instead, she challenges only the best interest findings.

## B. Best Interest of the Child Factors

The Family Code statutory factors[5] and the *Holley* factors[6] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interests of the children.

The trial court heard the following testimony regarding the children's ages and vulnerabilities, Mom's course of conduct, and the children's placements.

## C. Children's Ages and Vulnerabilities

At the time of trial, E.P.A. was seven years old and E.C.A. was four years old. Neither child was able to care for themselves, and the Department had placed them with their maternal grandparents who were meeting their regular and special needs.

Both children are hemophiliacs, and E.C.A. has cerebral palsy. Both children need constant, diligent monitoring to protect them from life-threatening situations. Their physical conditions require numerous medical appointments with different specialists such as physical therapists, speech therapists, hematologists, and counselors. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D)).

## D. Mom's History of Substance Abuse

In 2017, the Department opened a case for Mom and Dad for using methamphetamine. Mom was ordered to inpatient and outpatient drug treatment and individual counseling—which she completed.

In January 2020, Mom and Dad were arrested during a traffic stop when the police found methamphetamine in the car. Initially, Mom denied using drugs. Later, in counseling, she

admitted using drugs, and at trial, she admitted she had used methamphetamines "on and off [for] maybe four or five years."

In the present case, which was initiated after her January 2020 arrest, Mom was again ordered to undergo drug assessment and treatment and submit to random drug testing. She was admonished in her service plan and ordered by the trial court that if she did not comply with her plan's requirements, she could lose her parental rights to her children.

Despite the trial court's order, Mom did not complete her substance abuse counseling or her intensive outpatient drug treatment. She explained that she could not complete her services because shortly after she began counseling, she was incarcerated, and she remained in jail until about three weeks before the last day of trial.

But the Department case worker testified that parents are usually able to engage in services despite being incarcerated, and outpatient drug treatment counseling was one of those services available to the incarcerated.

When Mom was asked whether she was still nursing E.C.A. in January 2020 when she was arrested, she said yes. When she was asked if she was using methamphetamine during the period she was nursing E.C.A., she invoked her Fifth Amendment right to remain silent. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also* TEX. R. EVID. 513; *Univ. of the Incarnate Word v. Redus*, 654 S.W.3d 169, 183 (Tex. App.—San Antonio 2022, no pet.) ("In a civil case, a fact finder may draw negative inferences from a party's assertion of the privilege against self-incrimination." (quoting *Brauss v. Triple M Holding GmbH*, 411 S.W.3d 614, 623 (Tex. App.—Dallas 2013, pet. denied))); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned

to the parent."); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same).

**E.      Mom's History of Anger, Violence**

Mom also has a history of anger, violence, and domestic violence.

In one incident, Mom attacked another female in their apartment complex, and Mom took a cell phone and backpack with items belonging to the victim. Mom was arrested.

In another incident, Mom went to her parents' home to visit the children; her sister was also visiting the home, and she had brought her two children. When Mom found out Dad had visited her children in the home, she became angry; she began yelling and cursing. Grandmother tried to calm Mom, and she asked her to keep her voice down and stop cursing because all four of the grandchildren were there. But Mom was enraged; she struck her father; she kicked and struck her sister; and she struck her mother.

Yet another incident occurred at the end of one of Mom's visits with the children at the Department. Grandmother had just gotten the children into the car when Mom became angry with grandmother. While Mom and grandmother were standing outside the car, Mom began yelling at grandmother, and the children were watching. Grandmother tried to calm Mom, but Mom "stormed away and walked to her car."

To help Mom address her anger management issues, the Department arranged for counseling. When she was not incarcerated, Mom participated in six counseling sessions with one counselor, but she needed more sessions to help her overcome her anger and violent behavior.

Mom had a different view; when she was asked at trial if she had "successfully addressed the issues that brought your two [children] into care," Mom said, "I believe I have." *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also In re D.M.*, 452 S.W.3d at 471; *Walker*, 312 S.W.3d at 617 ("Evidence

that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future.").

## F. Mom's Visits with the Children

While this case was pending, Mom was incarcerated for about ten months; during that time, she attended virtual visits with the children six or seven times, but those visits had adverse effects on at least one of her children. E.P.A. suffered from encopresis, but with counseling, he was improving. However, after visits with Mom, E.P.A.'s encopresis would worsen, and he would act out at school. As time passed after Mom's visits, E.P.A.'s condition and actions would improve. Grandmother attributed E.P.A.'s adverse reactions to the emotional trauma of Mom's visits. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (5), (6), (7), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

## G. Safe, Stable Housing

Under her service plan, Mom was required to establish and maintain safe and stable housing for the children. She had been released from incarceration less than three weeks before trial, and she was living in a two-bedroom apartment with a man with multiple charges for possession of a controlled substance and an alcohol problem. When asked if living with the man posed a risk to her children, Mom insisted there were no drugs in the house right now, and the man could drink if he wanted to. *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (G), (H)).

## H. Providing for Children's Needs

Under her service plan, Mom was also required "to demonstrate the ability to meet her children's financial needs and secure basic needs such as food, clothing, and shelter." Mom testified that she got a temporary, part-time job doing cleanup for a construction company. She

works about twenty-four hours per week, and she earns $13 per hour. *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H), (I)).

## I.      Children's Placement

The children are currently living with their maternal grandparents, with whom they have been living for almost three years. Before the children were removed, E.P.A. had angry, aggressive outbursts at school and at home. After they were placed with the grandparents, E.P.A.'s anger issues improved.

The grandmother is a stay-at-home parent. She takes the children to all their medical appointments and gets them the services they need. The grandparents have the financial means to care for the children, they are knowledgeable about the community resources available to meet the children's special needs, and they are meeting all the children's needs.

The children are very bonded to their grandparents. The grandmother is their primary caregiver; she is very attentive to the children: she monitors them closely, she always carries a medical kit for the children, and she teaches them right from wrong. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

## J.      Ad Litem's Recommendation

The children's ad litem testified that the relationship between the grandparents and the children is excellent, but Mom's lack of responsibility and accountability and poor decision making were still present. The ad litem recommended that it was in the children's best interests that Mom's rights be terminated so that the children could continue to live with the maternal grandparents. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G), (H)).

**K.     Sufficient Evidence**

The trial court could have believed the testimony about Mom's (1) multi-year history of drug abuse, (2) multi-year history of anger and violence, and (3) her failure to complete anger management, drug treatment, and other ordered services.  *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

The trial court could have concluded that Mom continued to use methamphetamine while she was nursing E.C.A.  That conclusion would be consistent with the testimony from one of Mom's counselors who testified that Mom had very poor parenting style, made very poor parenting decisions, and showed a lack of responsibility and accountability.

The trial court could also have concluded that Mom's angry and violent outbursts caused severe emotional trauma to her children.

It could also have believed the testimony that the children are doing well living with their grandparents, and they are meeting the children's regular and special needs, and they will continue to do so.  *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in the children's best interests for Mom's parental rights to be terminated.  *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25).  Therefore, the evidence was legally and factually sufficient to support the trial court's best-interests-of-the-children findings.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

CONCLUSION

For the reasons given above, we affirm the trial court's order.

Patricia O. Alvarez, Justice

<hr>

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met subsections (N), (O), and (P):

    (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
        (i) the department has made reasonable efforts to return the child to the parent;
        (ii) the parent has not regularly visited or maintained significant contact with the child; and
        (iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]
    (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;
    (P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
        (i) failed to complete a court-ordered substance abuse treatment program; or
        (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

*Id.* § 161.001(b)(1).

[3] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

[4] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

    (1)    the child's age and physical and mental vulnerabilities;
    (2)    the frequency and nature of out-of-home placements;
    (3)    the magnitude, frequency, and circumstances of the harm to the child;
    (4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;
    (5)    whether the child is fearful of living in or returning to the child's home;
    (6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
    (7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

 (A) minimally adequate health and nutritional care;

 (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

 (C) guidance and supervision consistent with the child's safety;

 (D) a safe physical home environment;

 (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

 (F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

 (A) the desires of the child;

 (B) the emotional and physical needs of the child now and in the future;

 (C) the emotional and physical danger to the child now and in the future;

 (D) the parental abilities of the individuals seeking custody;

 (E) the programs available to assist these individuals to promote the best interest of the child;

 (F) the plans for the child by these individuals or by the agency seeking custody;

 (G) the stability of the home or proposed placement;

 (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

 (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).